[No. A075810. First Dist., Div. Three. Sept. 19, 1997.]

THOMAS HAVSTAD et al., Plaintiffs and Appellants, v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Mike H. Welty, John H. Manning and Paul N. Crane for Plaintiffs and Appellants.

Steyer, Lowenthal & Walker, Steven R. Walker and Carlos A. Alvarez for Defendant and Respondent.

## OPINION

**WALKER, J.**—Thomas and Laura Havstad appeal from a judgment entered in favor of respondent, Fidelity National Title Insurance Company (Fidelity),

after the trial court granted Fidelity's motion for summary judgment. The Havstads' complaint, containing causes of action for breach of insurance contract and breach of the covenant of good faith and fair dealing, alleged that Fidelity had breached its duty to defend under a policy of title insurance. Appellants now contend that the trial court erred in granting Fidelity's motion for summary judgment by applying an unduly narrow construction to the policy and to respondent's duty to defend under it. We hold the trial court did not err in concluding that Fidelity had established that no potential for coverage existed under the policy, a showing which the Havstads failed to rebut. We therefore affirm the entry of judgment.

## Factual and Procedural Background

In May 1989, the Havstads purchased five parcels of real property in the Rolands subdivision in Sonoma County and obtained a California Land Title Association (CLTA) policy of title insurance from Fidelity, insuring their title in the parcels. Included among the five parcels were two contiguous parcels described as a portion of lot 23 in block B of subdivision 2 of Rolands (lot 23) and lot 1 in block C in subdivision 3 of Rolands (lot 1), which were eventually to become the subject of litigation, and with which we are now concerned. In October 1989, the Havstads were sued by David Replogle, who owned several parcels to the north of lots 1 and 23, and who claimed ownership in a strip of land referred to on the subdivision map as "not a public street" which runs from a public street (Drake Road), across Replogle's land, across land belonging to a third party, and ends before reaching the portion of lot 23 owned by the Havstads. (See parcel map appended to this opinion.) Soon after having acquired lots 1 and 23, the Havstads cut down a fence on the northern boundary of their property and began going across the neighboring third party's property to use "not a public street" as a means of ingress and egress to their lots.[1] Replogle's action against the Havstads sought damages for trespass, asked for injunctive relief, and sought to quiet title in the property known as "not a public street." The Havstads looked to Fidelity for a defense of the Replogle action under the policy of title insurance. Fidelity declined the tender on the ground that there existed no potential for coverage under the policy. The Havstads thereafter defended and cross-complained, alleging that they possessed the right to use the property pursuant to a claimed easement. The Havstads prevailed after a court trial in which the judge determined that they possessed an implied easement in "not a public street." The Havstads, bolstered by their victory, sued Fidelity for breach of insurance contract and breach of

[1]The Havstads' land is not immediately contiguous with Replogle's, so that in using "not a public street," the Havstads were first passing over property owned by a third party, who is not a party to this appeal.

the covenant of good faith and fair dealing, and sought punitive damages, for Fidelity's refusal to defend the Replogle action. Fidelity successfully moved for summary judgment; the Havstads appeal.

## Discussion

■ A defendant moving for summary judgment meets its burden of proof of showing that a cause of action has no merit by showing that one or more elements of the plaintiff's cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*; see *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].) On appeal, we independently evaluate the correctness of the trial court's ruling, applying the same legal standard as the trial court. (*Van Dyke* v. *Dunker & Aced* (1996) 46 Cal.App.4th 446, 451 [53 Cal.Rptr.2d 862].)

■ In granting summary judgment, the trial court found that Fidelity had met its burden of showing that the Havstads' action had no merit, and that the Havstads had "not presented sufficient evidence to raise a triable issue of material fact relating to applicable coverage under the policy or any obligation on [Fidelity's] part to defend the underlying Replogle action." On summary judgment, and in responding to this appeal, Fidelity contends that it had no duty to defend the Replogle action under the title insurance policy issued to the Havstads because that action did not pertain to the title of any of the "land" described and insured under the policy, and did not involve a denial of all access to the property, thereby raising no potential for coverage under the policy. Pointing out the well-settled principle that an insurer must defend any action which potentially seeks damages within the coverage of the policy (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168]) the Havstads claim that the policy language was sufficiently broad to potentially encompass the issues raised in the Replogle action, so that Fidelity should have provided a defense. In addition, they claim that the policy's use of the term "land" is ambiguous, requiring an inquiry into facts extrinsic to the policy, and thereby raising a triable issue of material fact as to their reasonable expectation of coverage under the policy.

### The Policy

Since the obligation to defend is grounded in the insurance policy's provisions, we first look to those to determine Fidelity's duty to the

Havstads. Fidelity issued to the Havstads a standard CLTA title insurance policy which covered the five parcels purchased by the Havstads, including lots 1 and 23. The policy purported to cover a fee interest in the land, and insured against any losses incurred by reason of title to the property being different than stated in the policy. The policy also insured against losses incurred by a lack of right to access to and from the insured land.[2]

*The "Land" Encompassed by the Policy*

Appellants assert that the policy should be read to have insured their easement rights in "not a public street" because the policy incorporates a description of lots 1 and 23 and includes reference to the subdivision maps which created those lots and which maps include neighboring roadways and easements. They rely upon *Danielson* v. *Sykes* (1910) 157 Cal. 686 [109 P. 87], in which the court held that "[w]hen a lot conveyed by a deed is described by reference to a map, such map becomes a part of the deed." (*Id.* at p. 690.) As such, *Danielson* held, the purchasers of lots so conveyed have a private easement not only in the streets appurtenant to their lots, but also in other streets or passages in the subdivision which are of material benefit to the purchased lot.[3] Therefore, appellants contend, the policy should be interpreted to include "not a public street" even though it is clearly neither a part of nor appurtenant to either of the lots specifically referred to in the Schedule "A" description.

Appellants' argument contains a basic flaw: It ignores the plain language of the insurance policy, which must guide our inquiry here, as the policy represents the agreement between the insurer and the insured. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 44 [65 Cal.Rptr.2d 366, 939 P.2d 766].) "Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts. Under

---

[2]The policy insured against losses incurred "by reason of: 1. Title to the estate or interest described in Schedule A being vested other than as stated therein; . . . . 4. Lack of a right of access to and from the land. . . ." Schedule A, in turn, set forth that "the estate or interest in the land described or referred to herein is at date of policy: A fee." Schedule A incorporated the description of the insured land: "The land referred to in this policy is situated in the County of Sonoma, State of California, and is described as follows: Please see Exhibit 'A' attached hereto and made a part hereof." As provided, exhibit A to schedule A describes the property insured in the following relevant particulars: "The land referred to in this report is . . . described as follows: . . . Lot numbered 23 in Block B . . . Lot 23 Block B [as] so delineated and designated upon the map entitled, 'Subdivision No. 2 of Rolands, . . .' . . . . Lot[] numbered 1 . . . in Block lettered C as said lot and block are delineated and so designated upon that certain map entitled, 'Subdivision No. 3 of Rolands. . . .'"

[3]The trial court in the Replogle action relied upon *Danielson* v. *Sykes, supra,* 157 Cal. 686 in finding that the Havstads had an implied easement in "not a public street."

statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs its interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation unless 'used by the parties in a technical sense, or unless a special meaning is given to them by usage.' (*Id.*, §§ 1638, 1644.) If the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning. [Citations.]" (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

As it happens, the policy defines "land" as follows: "the land described, or referred to in Schedule 'A,' and improvements affixed thereto which by law constitute real property. *The term 'land' does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets*, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy." (Italics added.) Additionally, the policy insures *a fee* title in the described land. Schedule A contains no reference to any easements or rights of way.

Thus, the written title insurance contract provisions "clearly and explicitly" insure a fee title in lots 1 and 23; "clearly and explicitly" do *not* cover "any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest estate or easement in abutting streets"; and "clearly and explicitly" contain no separate indorsements covering an easement in the nonabutting property known as "not a public street." An ordinary reading of the land's description indicates coverage for two pieces of property—lot 1 and lot 23. Reference to the subdivision maps is included to provide guidance as to where the graphic representation of the property can be located. In our view, the policy is completely unambiguous in its description of the land covered, and in the exclusion of any potential coverage for the easement claimed by the Havstads in the Replogle action.

The Havstads suggest that their "reasonable expectation" of coverage under the policy was different from Fidelity's interpretation of coverage, and that this difference created an ambiguity and a triable issue of material fact. In determining whether coverage is consistent with the objectively reasonable expectations of an insured, " 'the court must interpret the language in context, with regard to its intended function in the policy. [Citation.] This is because "language in a contract must be construed in the

context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." [Citations.]' " (*Farmers Ins. Exchange* v. *Knopp* (1996) 50 Cal.App.4th 1415, 1422 [58 Cal.Rptr.2d 331], italics omitted.)    As noted, we find no ambiguity in the contract; it clearly included no potential for coverage of the Replogle action. Any expectation to the contrary on the part of the Havstads would have been subjective and unreasonable.    A party's subjective intent cannot be used to create an ambiguity or a material factual issue. "[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language." (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3 [6 Cal.Rptr.2d 554].)    Thus, the Havstads' subjective expectations as to policy coverage are irrelevant to our interpretation of the contract.

*Access to Lot 23*

The Havstads argue for the first time on appeal that Fidelity had an independent duty to defend the Replogle action as it had a direct effect on lot 23's access to a public street. They contend that without access to "not a public street" which connected to Drake Road, lot 23 was "landlocked." As noted above, the policy insures in part against losses sustained by reason of "[l]ack of a right of access to and from the land."

   It is well settled that in reviewing a summary judgment, " '. . . the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal. [Citations.]' " (*Uriarte* v. *United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 790 [59 Cal.Rptr.2d 332], italics omitted.)    Under this well-established rule, we need not address the Havstads' contention. In any case, as noted by respondent, the Havstads admitted in response to the summary judgment motion that lots 1 and 23 are contiguous and comprise a single buildable site, that lot 1 has access to Drake Road which is a public street, and that lot 23 has access to Drake Road by traversing lot 1. Thus, as there was never any question that the Havstads had access to their property, the potential for coverage was never triggered.

*Fidelity's Duty to Defend*

Because a duty to defend is only triggered where the potential for policy coverage is shown, and because Fidelity established that there was no potential for coverage of the Replogle action under the policy, the trial court

properly concluded that the Havstads' claim for breach of insurance contract was without merit. (See *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) This conclusion also disposes of appellants' claim for breach of the covenant of good faith and fair dealing. ■ "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." (*Id.* at p. 36, italics omitted.)

Affirmed. Respondent to recover costs on appeal.

Phelan, P. J., and Corrigan, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 10, 1997.

APPENDIX

Relevant Portions of Subdivision Nos. 2 and 3 of Rolands
Showing Lots 1 and 23 and "Not a Public Street"