**L. BARBER GEMS, INC.,**
Plaintiff—Appellant,

v.

**BRINK'S DIAMOND & JEWELRY NORTH AMERICA; Brink's Global Services, Inc., Defendants—Appellees.**

No. 01–56340.
D.C. No. CV–99–10900–NM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2002.
Decided July 31, 2002.

Berzon, Circuit Judge, dissented and filed opinion.

Before WARDLAW, BERZON, Circuit Judges, and ISHII, District Judge.*

MEMORANDUM**

L. Barber Gems, Inc. ("Barber") appeals the district court's grant of summary judgment in favor of Brink's Diamond & Jewelry North America, et al., ("Brink's"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the factual and pro-

cedural history of this case, we will not recount it here.

Barber contends the district court erred in finding that Jodhani's alleged conversion of diamonds was not the reasonably foreseeable consequence of Brink's delivery of the diamonds without first collecting payment. As a preliminary matter, the district court correctly held that the agreement between Barber and Brink's was a carriage contract, not a C.O.D. contract. *See Cermetek, Inc. v. Butler Avpak, Inc.,* 573 F.2d 1370, 1382 (9th Cir.1978). Under a C.O.D. contract, a carrier must strictly comply with its duty to collect, and is liable to the shipper for loss or damage caused by its failure to collect the price before delivery. *See* 13 Am.Jur.2d § 489 (2000). However, carriers under a general carriage contract have no duty to act as a collection agent; instead, they are bound by common law duties, including duties to receive, transport, care for, and deliver goods. *Cermetek,* 573 F.2d at 1375; *see also* 4 Witkin, Summary of California Law: Personal Property § 134 (9th ed.1987) (common carrier or bailee under the lesser standard of ordinary care). In the context of carriage contracts, consequential damages for misdelivery are recoverable only when they are the natural and probable consequence of the carrier's breach of contract. *See Contempo Metal Furniture Co. v. East Tex. Motor Freight Lines, Inc.,* 661 F.2d 761, 765 (9th Cir.1981).

In actions for breach of contract, it is essential to establish a causal connection between the breach and the damages sought. *See* Cal. Civ.Code § 3300. "Proximate cause is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the

---

* The Honorable Anthony W. Ishii, United States District Judge for the Eastern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

injury [or damage complained of] and without which such result would not have occurred." *State of California v.Super. Ct.*, 150 Cal.App.3d 848, 857, 197 Cal.Rptr. 914 (1984) (internal quotations and citations omitted). The district court concluded, and we agree, that Brink's failure to confirm payment was not the proximate cause of the loss suffered by Barber because Jodhani's alleged tort of conversion was an intervening event sufficient to break the chain of causation.

Barber nevertheless argues that this case presents a simple chain-of-causation scenario. At most, however, Brink's breach amounts to a "but for" cause for the loss, which is not determinative of proximate cause. As the district court correctly concluded:

> For Plaintiff's loss to have been the proximate cause of Brink's breach, it must have been foreseeable that: (a) Jodhani would refuse to pay for the goods on the basis o[f] their non-conformity to the invoice; (b) Plaintiff would enter into a settlement acknowledging the non-conformity and extinguishing Jodhani's obligation to pay for the goods; (c) in lieu of returning the goods pursuant to the settlement, Jodhani would substitute inferior diamonds of lesser quantity. While Plaintiff is correct that Brink's failure to comply with the shipping instructions "set the stage" for what followed, it cannot be said that this concatenation of events was the reasonably foreseeable consequence of Brink's failure to follow such instructions.

While the issue whether an intervening force is superseding is often a question of fact for the jury to decide, "like proximate cause generally, it is a matter of law where only one reasonable conclusion may be reached." *Brewer v. Teano*, 40 Cal. App.4th 1024, 1035, 47 Cal.Rptr.2d 348

(1995). Therefore, the district court correctly concluded the such alleged conduct was not reasonably foreseeable to Brink's at the time it entered into contract, and that it broke the chain of causation between Brink's act and Barber's loss.

Barber next argues that the district court erroneously concluded that the written contract between the parties did not create an insured/insurer relationship. However, the express agreement between Barber and Brink's belies this contention:

> Brink's is not an insurer hereunder. Brink's shall obtain and maintain, at all times during its performance of this contract, insurance payable to Brink's in such amounts and against such risks as shall adequately cover the liability assumed by Brink's under the contract.

The terms of the contract are clear and unambiguous. Plaintiff's alleged belief regarding insurance is immaterial, as "[a] party's subjective expectations as to policy coverage are irrelevant in determining whether an insurance policy is ambiguous." Justice H. Walter Croskey, Justice Marcus M. Kaufman, et al., California Practice Guide: Insurance Litigation § 4:118.5 (Rutter Group 2001) (citing *Havstad v. Fidelity Nat'l Title Ins. Co.*, 58 Cal. App.4th 654, 661, 68 Cal.Rptr.2d 487 (1997)). Therefore, the district court properly granted summary judgment in favor of Brink's on this claim.

Given our resolution of these issues, we need not address any of the other arguments raised by Barber.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting.

I respectfully dissent.

First, I am not at all sure that there was not a C.O.D. agreement between the parties. C.O.D. stands for "collect on delivery." *See* BLACKS LAW DICTIONARY (6th ed.

1991) ("These letters import the carrier's liability to the consignor to collect the cost of the goods from the consignee, and, if not collected, to return the goods to the consignor."); *see also* OXFORD ENGLISH DICTIONARY (2d Ed. 1989). Even though C.O.D. delivery generally requires a turning over of cash or a check to the carrier, in today's world it makes sense to treat a contract requiring the collection of proof of a wire transfer as analogous to a C.O.D. contract. There is no substantial difference between collecting a check, which is simply a piece of paper telling a bank to give someone money, and collecting a piece of paper confirming an electronic payment that has already occurred. The fundamental purpose of the transaction here is the same as in any C.O.D. agreement—to assign to the carrier not only the task of delivery but also the task of assuring that the product is paid for before it is placed in the hands of the customer. The precise manner in which that payment is to be made should not matter.

In any event, I do not see why it matters whether there was a C.O.D. contract with Brink's. Whatever kind of contract it was, there is no dispute that it was breached when Brink's negligently failed to assure the wire transfer of the money before allowing the customer to retain the goods.

The majority argues that the damage resulting from Brink's breach of its contract with L. Barber Gems was not foreseeable. This is contrary to the facts.

Barber specifically contracted with Brink's to confirm payment prior to delivery for the very reason that he feared nonpayment by the recipient. That a customer who is not required to pay before accepting the goods might never pay at all is precisely why sellers insist on payment before delivery.

In contrast to the majority, I see Barber's injury as occurring at the moment the delivery took place without confirmation of payment, rather than when Jodhani much later substituted inferior diamonds for the original ones delivered by Barber. The unlikely chain of events that concerns the majority was simply Barber's attempt to mitigate his damages. Barber was under an obligation to mitigate his damages. If he had failed to do so, his damages would have been reduced accordingly. *See, e.g., Spurgeon v. Drumheller,* 174 Cal. App.3d 659, 220 Cal.Rptr. 195 (1985). That Barber's mitigation effort went astray should not affect Brink's liability.

Brink's breached its contract and damages were foreseeable. I would therefore reverse the District Court and allow Barber's case to proceed. I respectfully dissent.