Filed 4/15/13  Ruby's Laguna Assocs. v. Ruby's Diner CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUBY'S LAGUNA ASSOCIATES, LTD., | |
| Plaintiff and Appellant, | G046485, G046786 |
| v. | (Super. Ct. No. 30-2009-00124231) |
| RUBY'S DINER INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment and an order of the Superior Court of Orange County, Gregory Munoz, Judge.  Reversed and remanded.

Morrow & White, Christopher A. White, Frederick M. Heiser, William J. Penisten and Michael E. Israel for Plaintiff and Appellant.

Kohut & Kohut and Laura Kohut Hoopis for Defendant and Respondent.

\*          \*          \*

In its demurrer, defendant and respondent Ruby's Diner, Inc. (Ruby's Diner) claimed Doug DeCinces (DeCinces) was not the proper plaintiff with respect to the cause of action for breach of a right of first refusal, inasmuch as he was not a party to the agreement that contained the right of first refusal and that identified Ruby's Laguna Associates, Ltd. (Laguna Associates) as the holder of the right. The court sustained the demurrer. So, the plaintiffs amended the complaint to state that Laguna Associates was the plaintiff pursuing that cause of action. Ruby's Diner then filed a motion for summary judgment, contending that Laguna Associates was not the proper plaintiff, *DeCinces was*, because he was the holder of the right of first refusal. The court granted summary judgment, leaving no plaintiff to pursue the second cause of action.

In reviewing the summary judgment, we first conclude that Laguna Associates succeeded in raising a triable issue of material fact as to whether it was indeed the proper plaintiff. This notwithstanding, we also conclude that no trial will be necessary on the identity of the proper plaintiff, on remand. We apply the doctrine of judicial estoppel to bar Ruby's Diner from claiming that Laguna Associates is not the proper plaintiff with respect to the second cause of action. We reverse the summary judgment in favor of Ruby's Diner, together with the award of attorney fees in its favor, and remand.

I

FACTS

In May 1989, Ruby's Diner and Laguna Associates entered into a limited partnership agreement (Ruby's Diner Laguna Beach Partnership Agreement) pursuant to which they formed Ruby's Diner Laguna Beach, a California limited partnership (Ruby's Diner Laguna Beach Partnership). Ruby's Diner was the general partner and Laguna Associates was the limited partner. The partnership was formed for the purpose of operating a diner in Laguna Beach. Ruby's Diner made an initial capital contribution of $100,000 and Laguna Associates made an initial capital contribution of $700,000.

2

Section 10.14 of the Ruby's Diner Laguna Beach Partnership Agreement stated in pertinent part: "The Limited Partner retains the first right of refusal to participate in future Orange County and San Diego Ruby's projects where Ruby's Diner, Inc. chooses to finance the project via a limited partnership."

DeCinces was the general partner of Laguna Associates. He also held an ownership interest in Laguna Associates.[1]

In June 2009, after a falling out, DeCinces, Laguna Associates, and a number of other entities, commenced litigation against Ruby's Diner and a variety of other defendants. In the second cause of action of the first amended complaint, DeCinces, in his individual capacity, alleged that certain defendants had breached the right of first refusal by failing to give him an opportunity to participate in various additional projects.

Ruby's Diner and other defendants filed a demurrer with respect to a number of causes of action, including the second cause of action. They asserted that DeCinces had failed to state facts sufficient to constitute a cause of action because he was not a party to the Ruby's Diner Laguna Beach Partnership Agreement, which contained the right of first refusal. In the opposition to the demurrer, DeCinces explained that he

---

[1]     Laguna Associates represents that it is owned 99 percent by DeCinces and 1 percent by his wife, but Ruby's Diner cries, "Foul!" It says there is no evidence properly before this court disclosing the ownership of Laguna Associates. We disagree. In an excerpt of DeCinces's January 21, 2010 deposition testimony, provided by Ruby's Diner in support of its second summary judgment motion, DeCinces confirmed that he and his wife owned 100 percent of Laguna Associates. As for the percentages of ownership, in a declaration of DeCinces that Ruby's Diner provided in support of its first motion for summary judgment, DeCinces stated he owned 99 percent and his wife owned 1 percent. Ruby's Diner claims we may not consider this declaration because it was not before the trial court when ruling on the second summary judgment motion. Whether or not we agree with that assertion is inconsequential. The ownership of Laguna Associates is immaterial to the issue of whether a triable issue of fact was raised in this matter.

3

held the right of first refusal as general partner of Laguna Associates. The court sustained the demurrer to the second cause of action, in August 2009.

Consequently, DeCinces and others filed a second amended complaint. The second cause of action was recast to name Laguna Associates as the plaintiff, instead of DeCinces. The plaintiffs alleged that the contract in question granted Laguna Associates a right of first refusal. They abandoned the argument that, because DeCinces was the general partner of Laguna Associates, the right of first refusal could be exercised by him individually. The fourth amended complaint was to the same effect.

On August 31, 2010, plaintiffs and defendants to the action, including DeCinces individually, Laguna Associates, and Ruby's Diner, settled most of the litigation. Pursuant to the settlement agreement, the plaintiffs released all claims against the defendants "except for any and all claims associated with [the] Right of First Refusal discussed in Section 10.14 of the . . . Ruby's Diner Laguna Beach [Partnership Agreement], including but not limited to, the Second Cause of Action for Breach of Contract — Right of First Refusal contained in the Fourth Amended Complaint, which will remain pending . . . ." Using like language, they agreed to dismiss with prejudice "each claim asserted in the Action as to all Defendants, except for any and all claims associated with [the] Right of First Refusal discussed in Section 10.14 of the . . . Ruby's Diner Laguna Beach [Partnership Agreement], including but not limited to, the Second Cause of Action for Breach of Contract – Right of First Refusal contained in the Fourth Amended Complaint, which will remain pending."

On September 10, 2010, per the request of the plaintiffs, all claims of all plaintiffs were dismissed with prejudice, with the exception of the second cause of action contained in the fourth amended complaint.

In June 2011, Ruby's Diner filed its second motion for summary judgment, wherein it alleged that Laguna Associates had no standing to maintain the second cause of action, because the only person who could exercise the right of first refusal was

4

*DeCinces in his individual capacity.*  The court found that Ruby's Diner had met its burden to show that the right of first refusal had been assigned to DeCinces individually and that Laguna Associates had failed to raise a triable issue of material fact to show otherwise.  It entered summary judgment in favor of Ruby's Diner, including an award of attorney fees in the amount of $645,459.05.  On appeal, Laguna Associates challenges both the summary judgment and the award of attorney fees.

II

DISCUSSION

A.  *Summary Judgment Review:*

"Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his [or her] favor on a cause of action . . . or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff 'contend[ing]. . . that there is no defense to the action,' a defendant 'contend[ing] that the action has no merit' (*ibid.*).  The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c))." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

"[I]n moving for summary judgment, a 'defendant . . . has met' his [or her] 'burden of showing that a cause of action has no merit if' he [or she] 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts

5

exists as to that cause of action or a defense thereto. . . .' (Code Civ. Proc., § 437c, subd. (*o*)(2).)"[2] (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.)

On review of a summary judgment, we "examine the record de novo and independently determine whether [the] decision is correct. [Citation.]" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1149.)

*B. Motion:*

In its motion, Ruby's Diner asserted that Laguna Associates had assigned its interest in the right of first refusal to DeCinces personally, so that DeCinces was the only one who could exercise the right of first refusal after all. It argued that the second cause of action failed because: (1) DeCinces was no longer named as the plaintiff in the second cause of action; (2) DeCinces individually had settled all his claims; (3) the doctrine of judicial estoppel barred DeCinces from claiming an interest in the right of first refusal because, after the sustaining of the demurrer, he maintained that the right of first refusal was held by Laguna Associates; and (4) DeCinces had unreasonably delayed in seeking to be reinstated as plaintiff in the second cause of action.

In its separate statement of undisputed material facts in support of its motion, Ruby's Diner stated that Laguna Associates had assigned the right of first refusal to DeCinces individually, pursuant to an assignment agreement dated June 30, 2005. It also stated that, in his May 4, 2011 deposition, DeCinces had testified that the ownership of the right of first refusal as reflected in the assignment agreement was "in effect." Ruby's Diner also stated that DeCinces had testified in his January 21, 2010 and February 1, 2010 depositions that he individually owned the right of first refusal. The motion was supported by a copy of the assignment agreement and excerpts of the January 21, 2010, February 1, 2010 and May 4, 2011 deposition transcripts.

---

[2]     See now Code of Civil Procedure section 437c, subdivision (p)(2).

The June 30, 2005 assignment agreement appeared to have been signed by DeCinces as general partner of Laguna Associates (the assignor) and by DeCinces in his individual capacity (the assignee). The document recited that Laguna Associates assigned its interest in the right of first refusal to DeCinces and that DeCinces accepted the assignment.

## C. Opposition to Motion:

In opposition to the motion, Laguna Associates asserted that: (1) in 2005, it and DeCinces began negotiating a buy-out transaction with Ruby's Diner; (2) as part of the proposed buy-out, Ruby's Diner requested that Laguna Associates assign the right of first refusal to DeCinces, so that the right of first refusal would be included in the buy-out transaction; (3) DeCinces hired Attorney Thomas Brown, in 2005, to draft an assignment agreement and a buy-out agreement; (4) neither DeCinces nor Laguna Associates ever intended the assignment agreement to be effective unless the parties entered into the proposed buy-out agreement; (5) Attorney Brown delivered executed documents to Attorney Allen Duboff, counsel for Ruby's Diner; (6) in 2007, the buy-out deal fell through; (7) Attorney Brown then requested that Attorney Duboff return the buy-out agreement and the assignment agreement; and (8) Ruby's Diner thereafter offered at least one project to Laguna Associates, pursuant to the right of first refusal.

## D. Evidence:

### (1) Introduction—

Ruby's Diner says the trial court properly granted summary judgment because there is no admissible evidence in what it calls the "[m]otion record" to raise a triable issue of material fact as to whether Laguna Associates currently holds the right of first refusal. The evidence in the "[m]otion record," it argues, unequivocally shows the right of first refusal is held by DeCinces, not Laguna Associates.

7

Ruby's Diner claims that we may not consider much of the record in the appellant's appendix because it contains copies of many court filings unrelated to the second summary judgment motion. It says we cannot look at any portion of the record that is not directly related to the second summary judgment motion and the ruling thereon. Ruby's Diner cites *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666 and *Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654 in support of its position.

We do not construe those cases as narrowly as Ruby's Diner does. True, in reviewing a summary judgment, the appellate court will disregard new allegations made for the first time on appeal, and new theories not presented to the trial court cannot create a triable issue of fact on appeal. (*Havstad v. Fidelity National Title Ins. Co.*, *supra*, 58 Cal.App.4th at p. 661.) This is not the same as saying that we may not consider a piece of evidence that was presented to the trial court but may not have been cited in the moving papers on summary judgment. In any event, it matters not. The evidence we consider was contained in the papers directly related to the second summary judgment motion.

Ruby's Diner also asserts a myriad of other reasons why we should not consider particular items of evidence to which Laguna Associates draws attention in its briefing. We need not go through each item of evidence, and corresponding challenge, one by one. Suffice it to say that, with the limited exceptions specifically noted below, we do not consider any of the evidence Ruby's Diner challenges on appeal. We note below certain evidence as to which the trial court sustained or overruled the objections of Ruby's Diner. Where the court sustained the objections, we will disregard the evidence, without taking the time to address whether or not the court erred in sustaining the objections. Where the court overruled the objections, we note Ruby's Diner has filed no appeal of its own to challenge those rulings.

8

*(2) DeCinces's depositions—*

In their papers in support of or in opposition to summary judgment, each party cited portions of the transcripts of various depositions of DeCinces. There are ways in which his testimony seems contradictory and ways in which it seems perfectly consistent. It is consistent throughout as expressing the thoughts of a layman on the effect of legal documents.

At his deposition on January 21, 2010, DeCinces was asked whether, in his view, the right of first refusal was owned by an entity or by himself individually. DeCinces responded: "My understanding is that the general partner . . . owns the right of first refusal . . . . So the answer is that yes, I believe I am the owner." The lawyer sought clarification, asking: "You personally as opposed to through some entity?" DeCinces replied: "Yes. Personally or in my trust. It's either myself or my trust." The lawyer then asked DeCinces whether it was his belief that Laguna Associates did not hold the right of first refusal. DeCinces stated that he was confused by the question and further said that "the partnership [agreement] clearly expresses that the rights of first refusal are held by the general partner. I don't know how explicit more I can go." [*Sic.*]

DeCinces was asked whether Laguna Associates had ever exercised the right of first refusal. In reply, he said: "My understanding was that it was presented to me, asking for investors in the new location. It was my practice to go to my initial investors . . . ." He explained that he surveyed his investors to see which ones were interested in participating, and to what extent.

The lawyer asked DeCinces whether he and his wife owned 100 percent of Laguna Associates and DeCinces confirmed that to be the case. The lawyer again asked DeCinces whether Laguna Associates ever exercised the right of first refusal. DeCinces replied: "My understanding was that was never presented to the Laguna Associates. It was always presented to me personally. . . . And when it was presented to me personally, I would do the work to find out whether I wanted to be involved in it or not. So the

9

answer to . . . was it ever presented [to] a legal . . . Laguna Associates or whatever, no. It was never presented in written form that way by Ruby's. It was always directed directly to me."

In his February 1, 2010 deposition, DeCinces said: "My understanding is that I personally hold the rights to the right of first refusal."

In his May 4, 2011 deposition, DeCinces was questioned repeatedly about the legal effect of the assignment agreement. Counsel for DeCinces repeatedly objected that the questions called for expert opinion, legal conclusions and speculation. Nonetheless, DeCinces testified as to his understanding of the assignment.

When asked what his understanding of the assignment was, DeCinces replied: "My understanding is what is written here is my belief." When asked whether Laguna Associates had assigned the right of first refusal to him, DeCinces said: "I understand that this is what exists today; that's what I understand." Again, when pressed whether it was his understanding that the assignment remained in effect, DeCinces responded: "I believe that that's what exists today."

Some of the foregoing testimony makes no sense from a legal perspective. It just reflects the viewpoint of a layman, who has an ownership interest in a company, and who is the general partner of that company and the one who fields communications put to that company—here Laguna Associates.

*(3) Declarations—*

*(a) DeCinces's declaration*

To explain the ambiguities and inconsistencies in the testimony and otherwise provide support for its opposition, Laguna Associates presented, inter alia, an August 23, 2011 declaration of DeCinces and an August 24, 2011 declaration of Attorney Brown. DeCinces declared that Laguna Associates had never assigned the right of first refusal to any person or entity. He further declared that in 2005, he, both individually and as general partner of Laguna Associates, began negotiating a transaction with Ruby's

10

Diner. He stated that as part of the transaction, Ruby's Diner requested that Laguna Associates assign the right of first refusal to himself individually. DeCinces said he hired Attorney Brown to draft the necessary paperwork, which included a buy-out agreement and the assignment agreement in question. DeCinces represented that he, both individually and as general partner of Laguna Associates, "never intended for the assignment agreement to become effective unless and until the entire sales transaction with RUBY'S DINER, INC. was fully executed." The court sustained an objection to the quoted language.

DeCinces also said that because the transaction fell through, "the assignment agreement — which was part of the sales transaction — was never effectuated." The court overruled an objection to the quoted language. With regard to his prior deposition testimony to the effect that he personally owned the right of first refusal, DeCinces said he was confused by the questions posed and did not understand the legal term "assignment."

*(b) Attorney Brown's declaration*

Attorney Brown declared that he had represented both DeCinces and Laguna Associates in connection with the negotiation of a buy-out agreement with Ruby's Diner. He said that the overall buy-out transaction included an assignment of the right of first refusal by Laguna Associates to DeCinces individually. Attorney Brown further declared that he and Attorney Duboff had "discussed that RUBY'S LAGUNA ASSOCIATES, LTD assign the Right of First Refusal . . . to Doug DeCinces as an individual, for the sole purpose of facilitating the proposed sales transaction." In addition, Attorney Brown stated that, in August 2007, he forwarded the buy-out agreement, together with the assignment agreement, to Attorney Duboff, but that shortly thereafter, the deal fell through. Attorney Brown further declared: "With the termination of the sales transaction, neither the buy-out agreement nor the assignment agreement was effective because Mr. DeCinces, in his individual capacity and capacity as general partner

11

for [Laguna Associates] did not intend that they be effective." The court sustained an objection to this quoted sentence about the parties' intent.

In his declaration, Attorney Brown also stated: "By e-mail dated August 24, 2007, . . . I specifically advised Mr. Duboff: 'Under the circumstances the Purchase Agreement previously delivered to you is no longer in effect and cannot be accepted by Ruby's.' I requested that the agreements be returned to me — that is, the buy-out agreement and the assignment agreement. Attached as Exhibit 'E' to Plaintiffs' Exhibit Binder is a true and correct copy of the August 24, 2007 e-mail that I sent to RUBY'S DINER, INC.'s attorney." The court sustained an objection to the last sentence of this quote, regarding the attached exhibit, but overruled an objection to the preceding quoted language regarding the content of the e-mail and the request for the return of the documents.

*(4) Other evidence—*

In addition to the foregoing evidence, Laguna Associates offered a portion of a transcript of the November 24, 2009 deposition of Doug Cavanaugh. In that deposition, Cavanaugh, who was the president of Ruby's Diner, was asked whether he had ever made an offer, under the right of first refusal, "to Ruby's Laguna, Limited or Doug DeCinces as the general partner on behalf of that Ruby's Laguna, Limited?" Cavanaugh replied: "Ruby's Laguna, Limited was offered opportunities . . . to be in concert with section 10.14." Seeking clarification, the attorney asked Cavanaugh to whom opportunities had been offered under the right of first refusal. Cavanaugh responded: "Because the first right is owned by Ruby's Laguna, Limited, that's who we would have made the offer to . . . ."

Laguna Associates also offered a portion of a transcript of the December 17, 2009 deposition of Ralph Kosmides, allegedly the chief administrative officer of Ruby's Diner. Kosmides was asked: "Ruby's Irvine Woodbridge was not offered to

12

either DeCinces or Ruby's Laguna Associates; correct?" Kosmides replied: "None of these were offered to DeCinces. They were all offered to Ruby's Laguna Associates."

Finally, Laguna Associates also presented an excerpt from the response of Ruby's Diner to Laguna Associates's fourth set of requests for admissions. Ruby's Diner was asked to admit that it had offered Laguna Associates an opportunity to invest in a particular project in 2008. In response, Ruby's Diner stated: "Without waiver of the Preliminary Statement and General Objections, [Ruby's Diner] responds: Admit."

Laguna Associates argued that the testimony of Cavanaugh and Kosmides and the discovery response show that Ruby's Diner itself acknowledged that the right of first refusal remained with Laguna Associates after the buy-out transactional documents were returned to Attorney Brown in 2007.

*E. Summary Judgment Analysis:*

When Ruby's Diner provided the court with a copy of the assignment agreement, coupled with DeCinces's May 4, 2011 deposition testimony to the effect that the assignment agreement was "in effect," it met its burden to show that the second cause of action had no merit, inasmuch as it produced evidence to show that Laguna Associates no longer held the right of first refusal and had no standing to enforce it. The burden then shifted to Laguna Associates to raise a triable issue of material fact as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.) It met this burden.

DeCinces's deposition testimony was inconsistent, true enough, but he was being asked questions which required a legal conclusion. His declaration, and that of his attorney, provided information regarding the history of the assignment agreement. Via his declaration, DeCinces did not retract his prior concession that the assignment agreement existed, but he explained why the assignment agreement was ineffective—because it was part and parcel of a failed buy-out transaction. These portions of

13

DeCinces's declaration remained intact even though objections to other portions of his declaration were sustained.

Ruby's Diner claims DeCinces's declaration is a sham, fabricated to contradict his unfavorable deposition testimony and the terms of the assignment agreement itself. It contends the court, in making its ruling, must necessarily have rejected the declaration as a sham. It further contends that the court did not err in rejecting the declaration, even in the summary judgment context.

"In *D'Amico* [*v. Board of Medical Examiners* (1974) 11 Cal.3d 1], the California Supreme Court declared that '[w]here a plaintiff's admissions in a deposition *contradict statements in the plaintiff's affidavits opposing the summary judgment*, "the rule of liberal construction loses its efficacy and the granting or denial of the motion for summary judgment depends upon the issues of credibility. Accordingly, when a defendant can establish his defense with the plaintiff's admissions sufficient to pass the strict construction test imposed on the moving party . . . , the credibility of the admissions are valued so highly that the *controverting affidavits* may be disregarded as irrelevant, inadmissible or evasive."' [Citations.] [¶] Properly applied, *D'Amico* is limited to instances where 'credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party.' [Citations.]" (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1521-1522.)

Here, the declaration of DeCinces was not the only evidence contradicting his deposition testimony. Rather, DeCinces also presented the declaration of his attorney, as well as the deposition testimony of Cavanaugh and Kosmides and a discovery response of Ruby's Diner itself.

Importantly, "[t]here is a vast difference between written discovery admissions, which are '"a studied response . . . ,"' that occur "under the direction and supervision of counsel, who has full professional realization of their significance"' [citation] and glib, easily misunderstood answers given by a lay opponent in a

14

deposition." (*Scalf v. D. B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at p. 1522.) Indeed, in *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, it was held that, in the summary judgment context, even apparently clear and conclusive deposition testimony about an assignment could be contradicted by a later declaration of the deponent to the effect that she had not understood the questions put to her at deposition. Although the plaintiff in *Niederer* had testified at deposition that a promissory note had never been assigned to her, she later provided a supplemental declaration admitting that the note had been assigned to her by written assignment and explaining that she had not understood the deposition question regarding the assignment because she "'did not understand the concept of assignment.'" (*Id.* at p. 1502.) This explanation having been made, it was proper to consider the contradictory evidence and grant summary judgment in favor of the plaintiff as the assignee of the promissory note, who was entitled to enforce it. (*Id.* at pp. 1503-1504.)

In the matter before us, DeCinces's declaration contradicted certain of his prior deposition testimony. However, he explained that he was confused by the questioning at deposition and did not understand the meaning of the legal term "assignment." In any event, it is clear that he was being asked questions which called for a legal expertise he did not possess as a layman. In the summary judgment context, deposition answers are evidence to be "considered and weighed in conjunction with other evidence. They do not constitute incontrovertible judicial admissions as do, for example, concessions in a pleading [citations], or answers to requests for admissions . . . . [Citation.]" (*Scalf v. D. B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at p. 1522.)

"*D'Amico* has never stood for the proposition that highly inculpatory testimony elicited from a party in a deposition may be sufficient by itself to warrant summary judgment, or that it relieves the moving party of its ordinary burden of showing the absence of a genuine factual dispute. On the contrary, the cases are clear that summary judgment should not be granted on the basis of 'tacit admissions or fragmentary

15

and equivocal concessions.' [Citations.]" (*Scalf v. D. B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at pp. 1522-1523.) Furthermore, the *D'Amico* rule does not apply to mistaken legal conclusions. (*Id.* at p. 1523.)

In addition to the declaration of DeCinces, we have the declaration of Attorney Brown. He stated that the assignment agreement was prepared as part of the failed buy-out transaction, and that when the deal fell through he requested that Attorney Duboff return the signed documents, including the assignment agreement. These portions of Attorney Brown's declaration were untouched by the ruling sustaining objections to other portions of his declaration.

Laguna Associates also provided the deposition testimony of Cavanaugh and Kosmides, to the effect that the right of first refusal belonged to Laguna Associates. It further provided the portion of Ruby's Diner's response to the request for admission wherein Ruby's Diner acknowledged, subject to certain objections not made plain by the record, that it had made an offer to Laguna Associates to participate in a particular project in 2008, a date after Attorney Duboff had purportedly received, and then returned, the assignment agreement.

Ruby's Diner contends that we should not consider the deposition testimony of Cavanaugh or Kosmides or the discovery response of Ruby's Diner. It says that Cavanaugh, Kosmides and Ruby's Diner had no personal knowledge of whether Laguna Associates or DeCinces was the one who held the right of first refusal. While that may be, we note that the depositions were taken and the discovery response was provided after the date Attorney Duboff purportedly had both received the assignment agreement and returned it to Attorney Brown. Arguably, if Attorney Duboff, representing Ruby's Diner, had received and returned the assignment agreement, the fact that Cavanaugh, Kosmides, and Ruby's Diner thereafter regarded Laguna Associates as the holder of the right of first refusal could support a finding that the assignment agreement was known by Ruby's Diner to be ineffective. Or, to the extent Ruby's Diner

16

made offers to Laguna Associates, and DeCinces did not speak up and clarify that offers should be made to him personally as assignee, this could support a finding that indeed the parties to the assignment agreement never intended it to be effective unless the buy-out transaction was consummated.  In any event, these are not matters we resolve on appeal.

"'In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted.'  [Citation.]  'Only when the inferences are indisputable may the court decide the issues as a matter of law.  If the evidence is in conflict, the factual issues must be resolved by trial.  "Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors."'  [Citation.]"  (*Scalf v. D. B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at p. 1519.)

The evidence Laguna Associates presented in opposition to the motion, inconsistencies notwithstanding, was sufficient to raise a triable issue of material fact as to whether Laguna Associates assigned away its interest in the right of first refusal in 2005.

*F.  Judicial Estoppel:*

The foregoing analysis addresses the appeal as originally framed by the parties.  However, we do not end our analysis here.  By order of March 12, 2013, we directed the parties to file supplemental briefing addressing whether Ruby's Diner is barred by the doctrine of judicial estoppel from claiming that Laguna Associates is not the current holder of the right of first refusal.  We also asked the parties to be prepared to argue the issue at oral argument.

"'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.  [Citations.]'"  (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 735, fn.

17

omitted.) "'The party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that the position was adopted by the first tribunal in some manner such as by rendering a favorable judgment. [Citation.]' [Citation.]" (*Ibid.*)

Here, Ruby's Diner has taken two inconsistent positions in these judicial proceedings. It first asserted, in its demurrer, that DeCinces was not the holder of the right of first refusal and later asserted, in its motion for summary judgment, that DeCinces *was* the holder of the right of first refusal. Remarkably, Ruby's Diner was successful in both assertions, inasmuch as the trial court both sustained the demurrer and granted summary judgment.

The dual goals of the doctrine of judicial estoppel "'are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary. [Citation.]' [Citation.]" (*Koo v. Rubio's Restaurants, Inc.*, *supra*, 109 Cal.App.4th at p. 735.) We cannot imagine a better case for the application of the doctrine. Here, DeCinces was originally identified as the plaintiff pursuing the second cause of action. Ruby's Diner convinced the court that DeCinces was not the proper party, so the demurrer was sustained and the plaintiffs amended the complaint accordingly, to identify Laguna Associates as the accepted plaintiff pursuing that cause of action. Once all other causes of action were settled and dismissed, Ruby's Diner said that Laguna Associates could not maintain the cause of action because DeCinces was the only one who could. In other words, through its successive motions, Ruby's Diner convinced the court that, although the right of first refusal existed and was owned by either DeCinces or Laguna Associates, neither of them could pursue a cause of action for breach of the right of first refusal because neither of them was ever the proper plaintiff at the proper time. We have difficulty digesting this notion.

18

Curiously, Ruby's Diner, in its supplemental letter brief, argues that it never took inconsistent positions in the trial court. Apparently, it does not regard stating, first, that DeCinces was not the proper plaintiff because he did not hold the right of first refusal, and second, that Laguna Associates was not the proper plaintiff because DeCinces *did* hold the right of first refusal, as taking inconsistent positions. Instead, Ruby's Diner focuses on the particular wording of its demurrer.

Ruby's Diner emphasizes that, in its demurrer, it argued DeCinces was not a party to the Ruby's Diner Laguna Beach Partnership Agreement, which contained the right of first refusal. Ruby's Diner further states that, in its demurrer, it "noted that 'to the extent Plaintiffs intend to allege that the [right of first refusal] rights were transferred to DeCinces following the execution of the Ruby's Diner Laguna Beach [Partnership] Agreement, Plaintiffs would be required to plead such facts. . . .'" (Fn. and underscoring omitted.)

According to Laguna Associates, the language Ruby's Diner omitted from the quoted portion of its demurrer is quite significant. The entire sentence from the demurrer reads: "Moreover, to the extent Plaintiffs intend to allege that the [right of first refusal] rights were transferred to DeCinces following the execution of the Ruby's Diner Laguna Beach [Partnership] Agreement, Plaintiffs would be required to plead such facts, including compliance with Section 6.03 of that agreement, which provides that the limited partner may not transfer any portion of its interest in the partnership without first offering it to the partnership at the price at which such interest is proposed to be sold and upon the proposed terms thereof." (Underscoring omitted.) In other words, Ruby's Diner characterized an assignment of the right of first refusal as a transfer of a partnership interest that would be barred if it were not first offered to the Ruby's Diner Laguna Beach Partnership, of which Ruby's Diner was general partner.

But there's even more to it than that. Ruby's Diner omits to mention a key provision of the Ruby's Diner Laguna Beach Partnership Agreement that has direct

19

bearing upon the matters at issue. We observe that section 6.06 of the Ruby's Diner Laguna Beach Partnership Agreement provides: "Any assignment or purported assignment of a Partnership interest which does not comply with the provisions of Sections 6.02 through 6.05 above, as applicable, shall be null and void . . . ." In other words, when Ruby's Diner stated in its demurrer that if DeCinces intended to claim that he was the assignee of the right of first refusal, he would have to show that Laguna Associates had complied with the requirements of the Ruby's Diner Laguna Beach Partnership Agreement by offering the assignment to the Ruby's Diner Laguna Beach Partnership before offering it to DeCinces, Ruby's Diner was indicating that if DeCinces failed to make that showing the purported assignment would be void.

When DeCinces opposed the demurrer, he did not claim that he owned the right of first refusal as assignee. He claimed that he owned it as general partner of Laguna Associates. Not surprisingly, the court sustained the demurrer. As Ruby's Diner points out, DeCinces did not seek to amend in order to clarify that he held the right of first refusal as assignee. But there are several reasons why he would not do so. First, faced with the realization that a man who is a general partner in a limited partnership does not own the partnership's rights in his individual capacity, the plaintiffs amended the complaint to state that the limited partnership, Laguna Associates, was the holder of the right of first refusal. Second, both DeCinces and Attorney Brown have declared that the assignment agreement, as part and parcel of the failed buy-out transaction, never became effective. And third, it would appear that the attempted assignment was void in any event because, evidently, Laguna Associates did not offer to assign the right of first refusal to the Ruby's Diner Laguna Beach Partnership before it executed the assignment agreement in favor of DeCinces.

After the demurrer had been sustained and Ruby's Diner had successfully knocked out DeCinces as plaintiff, it brought the motion for summary judgment to knock out Laguna Associates as plaintiff, stating that the true holder of the right of first refusal

20

was DeCinces, as assignee. It apparently abandoned its prior position that any assignment by Laguna Associates would have been barred unless first offered to the Ruby's Diner Laguna Beach Partnership. It ignored the corollary—that such an assignment would have been null and void. And, it made no allegation that Laguna Associates ever *had* offered to assign the right of first refusal to the Ruby's Diner Laguna Beach Partnership before executing the assignment agreement in favor of DeCinces. In other words, Ruby's Diner suggested no state of facts that could have made the assignment valid.

Ruby's Diner did indeed take inconsistent positions before the trial court with respect to the validity of any assignment agreement. However, Ruby's Diner is correct that the trial court did not sustain the demurrer on the basis of the assignment agreement, which DeCinces did not state was the basis of his claim.

Ruby's Diner is not correct, however, in its assertion that it took no inconsistent position upon which the trial court relied. As we have already stated, it first took the position that DeCinces was not the proper plaintiff and after the court agreed with that, Ruby's Diner then switched horses and took the position that DeCinces, not Laguna Associates, *was* the proper plaintiff. Then the court agreed with that. So, when the dust settled, neither DeCinces nor Laguna Associates would ever be standing before the court at the right time on the right day to be permitted to pursue his or its legal rights. Talk about a fast ball.

In the interests of equity and judicial integrity, we apply the doctrine of judicial estoppel against Ruby's Diner. Ruby's Diner having previously asserted that DeCinces was not a proper plaintiff because he was not a party to the Ruby's Diner Laguna Beach Partnership Agreement, which identified Laguna Associates as the holder of the right of first refusal, and the court having sustained the demurrer on that basis, cannot now claim that DeCinces, and not Laguna Associates, is the holder of the right of

21

first refusal.  On remand, Ruby's Diner shall be judicially estopped from claiming that Laguna Associates is not the holder of the right of first refusal.

*G.  Attorney Fees:*

Inasmuch as we reverse the summary judgment, the award of attorney fees in favor of Ruby's Diner as the prevailing party is also reversed.

III

DISPOSITION

The judgment and the order are reversed.  Ruby's Laguna Associates, Ltd. shall recover its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.