[No. C047339. Third Dist. May 5, 2005.]

WALTER W. SCALF, Cross-defendant, Cross-complainant and Appellant, v. D. B. LOG HOMES, INC., Cross-defendant, Cross-complainant and Respondent.

COUNSEL

McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer, Eric G. Lundberg and Bryan Bengtson for Cross-defendant, Cross-complainant and Appellant.

Law Offices of Harr, Arthofer & Ayres, Randall L. Harr and Griffith J. Tonkin for Cross-defendant, Cross-complainant and Respondent.

## OPINION

**BUTZ, J.**—In *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10] (*D'Amico*), the California Supreme Court noted that admissions of a party obtained through discovery receive an unusual deference in summary judgment proceedings, and, absent a credible explanation, prevail over that party's later inconsistent declarations. (*Id.* at p. 22.) However, later cases have cautioned that *D'Amico* should not be read "as saying that admissions should be shielded from careful examination in light of the entire record." (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735] (*Price*); accord, *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 77–78 [81 Cal.Rptr.2d 360] (*Scheiding*).)

In this case, the trial court granted summary judgment based upon certain inculpatory statements by the moving party's opponent in deposition, while refusing to consider other evidence disclosing triable issues of material fact. Because the trial court took an overly expansive view of *D'Amico* and an unduly myopic view of the entire record before it, we shall reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Yarbrough Litigation*

This action arises from the construction of a log cabin home on property owned by Dale and Diana Yarbrough (the Yarbroughs), using a log home kit sold to them by Walter W. Scalf, doing business as Hatchet Mountain Homes (Scalf), and manufactured by respondent D. B. Log Homes, Inc., doing business as Lodge Log Homes, Inc. (Lodge Log). Lodge Log supplied the precut logs, hardware, microfoam gasket material, layout plan and stacking plan for the home.

Litigation commenced when the builder of the home, Hughes Construction Company (Hughes Construction), filed a complaint against the Yarbroughs to foreclose a mechanic's lien on the property. In response, the Yarbroughs filed a cross-complaint naming Hughes Construction, Scalf, Lodge Log and project engineer Kenneth Reed alleging, inter alia, strict liability, breach of warranty, breach of contract, negligent misrepresentation and professional negligence. The Yarbroughs complained that the home suffers from numerous defects in

both materials and workmanship. These defects included: logs not properly sized according to the plans, logs with defectively drilled notches and bolt-through penetrations, omission of weather-blocking microfoam insulators, inadequate bolting of the log walls to the foundation causing failure of the tensioning rod systems, deviations from the plans, deletion of rim joists, improper load-bearing log splicing, and "structurally unsound and through-split logs."

After being brought in as cross-defendants in the Yarbrough suit, Scalf and Lodge Log each filed cross-complaints against the other. Scalf sought implied equitable indemnity and comparative contribution, and also alleged that Lodge Log was guilty of breach of warranty, breach of contract and negligence. Lodge Log not only sought implied equitable indemnity based on apportionment of fault, but set forth an independent cause of action for express indemnity based upon a "Lodge Logs Dealer Agreement" executed by Scalf and in force at the time of the subject events (dealer agreement). Paragraph 14 of the dealer agreement contains a "Dealer's Indemnity" clause, whereby Scalf agreed to hold harmless and indemnify Lodge Log against "any loss, claim of loss, lawsuit, cause of action, or claim asserted against Lodge Log[] by any third party . . . ."

*Summary Judgment Motion and Ruling*

During the course of discovery, Lodge Log took the deposition of Walter Scalf. In response to counsel's questions, Scalf stated that the dealer agreement was in force at the time of the subject transaction; that Lodge Log supplied the precut logs and the stacking plan for the Yarbroughs' home; that no one from Hughes Construction ever told him that the kit delivered to the Yarbroughs was "somehow incomplete"; and that he had no reason to believe Lodge Log "did anything wrong in this case." In addition, Lodge Log's counsel engaged the then 79-year-old Scalf in the following exchange:

"Q. Okay. Now as I understand it, the Lodge Log home kit that was sold to the Yarbroughs was off-loaded at your place on Hatchet Mountain?

"A. Burney Transportation in Burney.

"Q. Okay. Did you have a chance to look at the kit?

"A. Oh yeah.

"Q. Was there anything wrong with that Lodge Log home kit that was ultimately delivered to the Yarbroughs?

"A. Absolutely not.

"Q. Were the logs cured?

"A. Yes, sir.

"Q. Were the hardware components included?

"A. Yes sir, box full.

"Q. Was the microfoam gasket included?

"A. Yes, sir. [¶] . . . [¶]

"Q. Okay. With respect to the items that were criticized about the home that were related to [sic] by Mr. Richmond, do you attribute any of those problems to Lodge Log homes?

"A. Absolutely not.

"Q. Do you have any criticisms of the conduct of Lodge Log homes in this case?

"A. No."

During the course of litigation, the Yarbroughs filed for bankruptcy and were replaced as plaintiffs by a trustee in bankruptcy. Both Scalf and Lodge Log settled the Yarbrough cross-complaint with the bankruptcy trustee. The court then issued an order that the settlement was in good faith, thus discharging Lodge Log from all claims by codefendants for comparative equitable indemnity or contribution. (See Code Civ. Proc., § 877.6; *Turcon Construction, Inc. v. Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 282–284 [188 Cal.Rptr. 580].)

Lodge Log moved for summary judgment against Scalf on his cross-complaint and in favor of Lodge Log on the express indemnity and declaratory relief causes of action of its cross-complaint, based on the "Dealer's Indemnity" clause of the dealer agreement.[1]

---

[1] For purposes of the motion, Lodge Log abandoned other causes of action, seeking judgment against Scalf solely on its express indemnity claim.

In its moving papers, Lodge Log conceded that, in order to enforce the "Dealer's Indemnity" clause, it had to show that it was neither actively nor passively negligent. (See *MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 425 [105 Cal.Rptr. 725].) Lodge Log insisted however, that Scalf's deposition answers constituted judicial admissions that he was "perfectly happy" with the product provided to him by Lodge Log and had "no criticisms of the conduct of Lodge Log in this case." Lodge Log thus concluded that it had established the complete absence of fault on its part and that it was entitled to indemnification as a matter of law. By virtue of these same admissions, Lodge Log maintained that Scalf was precluded from pursuing his breach of warranty, breach of contract and negligence causes of action against Lodge Log.[2]

Both Scalf and cross-defendant Hughes Construction filed opposition to Lodge Log's summary judgment motion. Attached to the opposition papers were deposition excerpts from some of the principal parties to the litigation, describing problems with the Yarbroughs' log cabin. This evidence disclosed the following:

(1) Five to six weeks after the job began, contractor Dale Richmond discovered that Lodge Log had manufactured the pitch for the gable ends incorrectly—the logs were cut for an 8- and 12-pitch roof system, whereas the job order called for a 6- and 12-pitch roof. Scalf acknowledged to Richmond that Lodge Log had made the mistake. The Yarbroughs ended up having to pay the contractors extra money to partially disassemble the gables and cut the logs to conform to a 6- and 12-pitch roof, a task that Richmond described as "rather difficult."

(2) The bore head or saddle cuts (notches) on the logs were a "little large," creating sealing problems; Lodge Log's production manager admitted it had a problem with its borer head and Lodge Log was in the process of repairing or replacing it, which caused the delivery schedule to be delayed.

(3) The Yarbroughs were dissatisfied with the condition of the logs when they arrived at the construction site. They believed the quality of the logs was inferior to those in homes they were shown prior to entering into the contract. In fact, the Yarbroughs initially told Hughes Construction they were rejecting the logs.

---

[2] The implied indemnity counts of Scalf's cross-complaint were subject to dismissal by virtue of Lodge Log's good faith settlement with the bankruptcy trustee.

(4) The handrail and posts that were supposed to be included in the log home kit were missing. Consequently, the Yarbroughs had to spend over $3,000 to have them made and installed.

(5) With the Lodge Log home kit, no cuts in the logs were required; the contractor was simply supposed to stack them up. Yet when the home was finished, one could see numerous gaps in the interior of the home where daylight showed through, a condition inconsistent with the tight-fitting log arrangement depicted in the Lodge Log brochure.

(6) Scalf testified in deposition that he made only one trip out to the construction site, and that was to collect money from Mrs. Yarbrough. Eventually, he became aware that the Yarbroughs had stopped paying because they were displeased with the project. When asked what they were unhappy about, he replied "Everything in the book."

The trial court granted summary judgment in full, ordering Scalf to reimburse Lodge Log for all attorney fees, costs and settlement monies it paid in the Yarbrough litigation. Citing *D'Amico*, *supra*, 11 Cal.3d 1, the trial court ruled that Scalf's deposition testimony constituted "conclusive judicial admissions" that Lodge Log's log cabin kit conformed to the contract and was not defective. The court further declared that it was disregarding opposing evidence tending to undermine or contradict Scalf's admissions as "irrelevant, inadmissible, or evasive."

## DISCUSSION

### I. Principles of Review

■ As this court stated in *Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33 [105 Cal.Rptr.2d 525], "[s]ummary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ 'A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established . . . .' (Code Civ. Proc., § 437c, subd. (o)(2); see also, *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486–487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) Once the moving party defendant meets its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (o)(2).) ■ On appeal, the reviewing

court exercises its independent judgment, deciding whether undisputed facts have been established that negate the opposing party's claim or state a complete defense. (*Romano, supra,* at pp. 486–487; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].)" (*Starzynski,* at p. 37; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

"In reviewing the evidence, we strictly construe the moving party's evidence and liberally construe the opposing party's and accept as undisputed only those portions of the moving party's evidence that are uncontradicted." (*Herberg v. California Institute of the Arts* (2002) 101 Cal.App.4th 142, 148 [124 Cal.Rptr.2d 1].) "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' " (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540].)

## II. Did Lodge Log Carry Its Initial Burden?

On a motion for summary judgment, the initial burden is always on the moving party to make a prima facie showing that that there are no triable issues of material fact. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) This burden is unaffected by the strength of the showing in opposition to the motion. (See *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468 [110 Cal.Rptr.2d 627].)

In seeking summary judgment on its express indemnity claim, Lodge Log conceded that it had to demonstrate that it was *entirely free* of negligence with respect to the subject matter of the litigation.[3]

" 'The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish

---

[3] On appeal, Lodge Log makes the additional claim that even if Scalf's evidence showed it was negligent, its negligence must be considered "passive" and it is still entitled to enforce the express indemnity clause. However, because this argument was never advanced in or considered by the trial court, it is waived. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397].)

a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact.' " (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1355 [129 Cal.Rptr.2d 197].) Thus, as Lodge Log correctly pointed out in its moving papers, the Yarbroughs' cross-complaint "is the operative pleading in this case" and thus, all cross-actions must be viewed in the context of the allegations of the Yarbroughs' cross-complaint.

The Yarbroughs' cross-complaint contains several allegations that may be construed as charging Lodge Log with negligence, breach of implied warranty and strict liability for a defective product with respect to its manufacture of logs, plans and accessories for the Yarbroughs' home: The Yarbroughs allege that they discovered in February 1999 that the foundations, decks, floors, log walls, tiedowns, roofs, window systems, and microfoam sealers were "defective and not fit for their intended purpose," and "were not manufactured, tested, prepared, designed, evaluated, located, engineered or produced in a reasonably workmanlike manner." It is alleged that the components of the log home "have deteriorated and continue to deteriorate as a consequence of the inadequate design and defective construction." Problems include "discoloration, curling, mold, cracking, stress and other signs of failure, all of which will continue in the future, if not corrected." The Yarbroughs' cross-complaint goes on to allege that Lodge Log, as a "mass producer[] of log home systems, [is] strictly liable and responsible" to them for all damage suffered as the result of these defects, the amount of which is alleged to exceed $200,000.

Thus, in order to compel Scalf to pick up the whole tab for its litigation costs under the "Dealer's Indemnity" clause (and to warrant judgment on Scalf's cross-complaint for breach of warranty and breach of contract), Lodge Log had to demonstrate that the Yarbroughs' allegations were wholly meritless. It attempted to do so below by relying entirely on excerpts from Scalf's deposition. The trial court accepted Lodge Log's assertion that Scalf's testimony carried its burden of showing Lodge Log was free from fault in this transaction. We do not.

While Scalf's deposition testimony clearly contained answers that might reflect unfavorably on him if introduced at an eventual trial, they fall well short of demonstrating that *none* of the problems identified in the Yarbroughs' cross-complaint were attributable to Lodge Log. Scalf's role in the transaction was a limited one: He was basically a salesman who sold log home kits and plans produced by Lodge Log. Further, the deposition excerpts do not

disclose whether Scalf inspected the home after its construction, whether he was a percipient witness to the problems with deterioration, cracks and other defects claimed by the Yarbroughs, or whether he was *qualified* to render an expert opinion as to the quality or workmanship of Lodge Log products used to build the Yarbroughs' home.

Although it is true that Scalf stated that Hughes Construction never complained to him about problems with Lodge Log's kit, such testimony did not preclude the possibility that there were other problems with the kit to which Scalf was never made privy, or that *other* parties complained to Scalf about problems with the home. Nor was Scalf asked specific questions pertaining to a time frame other than when he received the kit, opened it and examined it for completeness. Conspicuously, Scalf was not asked about "discoloration, curling, mold, cracking, stress and other signs of failure," which the Yarbroughs alleged were observed in the home *after* it was constructed.

Lodge Log relies on *D'Amico* and its progeny to assert that Scalf's testimony that he found "nothing wrong" with the log kit, that it was complete when he examined it, and that he had "no criticisms" of Lodge Log's conduct were unequivocal admissions, exonerating it from all wrongdoing in the case. This is a misreading of *D'Amico*.

In *D'Amico*, the California Supreme Court declared that "[w]here a plaintiff's admissions in a deposition *contradict statements in the plaintiff's affidavits opposing the summary judgment*, 'the rule of liberal construction loses its efficacy and the granting or denial of the motion for summary judgment depends upon the issues of credibility. Accordingly, when a defendant can establish his defense with the plaintiff's admissions sufficient to pass the strict construction test imposed on the moving party . . . , the credibility of the admissions are valued so highly that the *controverting affidavits* may be disregarded as irrelevant, inadmissible or evasive.' " (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1503 [234 Cal.Rptr. 779] (*Niederer*), quoting *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768], italics added, and citing *D'Amico, supra,* 11 Cal.3d at pp. 21–22.)

Properly applied, *D'Amico* is limited to instances where "credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party." (*Price, supra,* 213 Cal.App.3d at p. 482, italics added; see, e.g.,

*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 859 [84 Cal.Rptr.2d 157].) In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony.

Lodge Log theorizes that, had Scalf provided similar responses to requests for admissions, there would be no question that the answers would be dispositive as to Lodge Log's liability. The argument founders because it fails to grasp that all admissions elicited in the course of discovery are not created equal.

██ There is a vast difference between written discovery admissions, which are " 'a studied response, made under sanctions against easy denials,' that occur 'under the direction and supervision of counsel, who has full professional realization of their significance' " (1 Hogan & Weber, Cal. Civil Discovery (1997) § 9.20, p. 508) and glib, easily misunderstood answers given by a lay opponent in a deposition.

Because our courts have been sensitive to this difference, the *D'Amico* rule has not been accorded as broad an application as the related principle of "judicial admission," which gives *conclusive effect* to the truth of the matter admitted. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 961 [62 Cal.Rptr.2d 142] (*Prilliman*).)[4] For summary judgment purposes, deposition answers are simply evidence. Subject to the self-impeachment limitations of *D'Amico*, they are considered and weighed in conjunction with other evidence. They do not constitute incontrovertible judicial admissions as do, for example, concessions in a pleading (*Prilliman*, at pp. 961–962; *Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1066 [14 Cal.Rptr.2d 604] & fn. 4 (*Kirby*)), or answers to requests for admissions, which are specially designed to pare down disputed issues in a lawsuit. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2003) ¶ 8:1388, pp. 8G-31 to 8G-32.)

██ *D'Amico* has never stood for the proposition that highly inculpatory testimony elicited from a party in a deposition may be sufficient by itself to warrant summary judgment, or that it relieves the moving party of its

---

[4] *Prilliman* actually states the principle backwards: "The related principle of 'judicial admission' has not been accorded as broad [an] application as the *D'Amico* rule." (*Prilliman, supra,* 53 Cal.App.4th at p. 961.) However, it is clear from the discussion set forth in the remainder of the paragraph that the court meant just the opposite: It is the *D'Amico* rule which has not been accorded as broad an application as the principle of judicial admissions.

ordinary burden of showing the absence of a genuine factual dispute. On the contrary, the cases are clear that summary judgment should not be granted on the basis of "tacit admissions or fragmentary and equivocal concessions." (*Price, supra,* 213 Cal.App.3d at p. 482; see *Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1224–1225, fn. 2 [63 Cal.Rptr.2d 422]; see, e.g., *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1110–1111 [252 Cal.Rptr. 122] [*D'Amico* rule held not applicable where plaintiffs testified in deposition that they joined a cult because it "satisfied [their] 'personal concerns and anxieties,' " yet their experts filed declarations opposing summary judgment, opining that plaintiffs were brainwashed]; *Niederer, supra,* 189 Cal.App.3d at p. 1503 [apparent contradiction between plaintiff's declaration and her deposition testimony may be explained by her supplemental declaration and other evidence].)

■ Thus, Scalf's deposition testimony that he found "nothing wrong" with the kit and that he had no "criticisms" of Lodge Log's conduct is *not* the equivalent of a judicial admission that Lodge Log was free from fault or that Scalf had no evidence to support his claim of indemnity. Moreover, given Scalf's limited personal knowledge of the matters complained of by the Yarbroughs and the lack of any foundational showing that he was qualified to give an expert opinion on the problems cited in the Yarbroughs' cross-complaint, these deposition responses were so vapid and conclusory as to render their evidentiary value all but worthless. (Cf. *Niederer, supra,* 189 Cal.App.3d at p. 1503 [*D'Amico* rule does not extend to mistaken legal conclusions].)

We conclude that Scalf's deposition responses did not carry Lodge Log's burden of demonstrating the absence of a factual dispute regarding its claim for express indemnity or Scalf's cross-complaint for breach of warranty and contract. While the evidence accompanying the motion may have been damaging to Scalf, it failed to rule out the possibility that Lodge Log bore some responsibility for the alleged defects in the Yarbroughs' log cabin. (See *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 187–188 [48 Cal.Rptr.2d 197] [plaintiffs' admissions in deposition that they did not observe specific incidents of undue influence did not conclusively eliminate all triable issues of fact or show that trust/will contest was without merit].)

### III. Disregarding Contrary Evidence

The trial court here did more than simply extend the holding of *D'Amico* beyond its parameters—it also used the case as a basis for refusing to

consider other evidence offered in opposition to the summary judgment motion, which contradicted or shed a different light on Scalf's deposition testimony. This was error.

The opposition to Lodge Log's motion contained deposition testimony from contractor Richmond and the Yarbroughs showing there were triable issues of fact regarding Lodge Log's potential liability for manufacturing a defective or poorly designed log home kit. This evidence included (1) the discovery, after construction commenced, that Lodge Log had fabricated the pitch for the gable ends incorrectly and contrary to the specifications in the Yarbroughs' order; (2) the Yarbroughs vociferously complained about the poor quality of the logs when they arrived at the construction site, asserting it was significantly inferior to that in homes they had been shown; (3) the handrail and posts were not included in the log home kit and had to be purchased and installed separately; (4) Lodge Log's production manager conceded that the bore heads in the saddles were cut too large due to a problem with its borer head; and (5) after the home was finished, numerous cracks could be seen in the logs and there were gaps in the log assembly where daylight showed through.[5]

The opposition also included portions of Scalf's deposition testimony in which he stated that he visited the construction site only one time, and that was to collect money from Mrs. Yarbrough. He also acknowledged the Yarbroughs were very unhappy with the home and eventually stopped paying for its construction.

The trial court refused to consider any of this evidence on the ground that it was "contrary" to Scalf's "conclusive judicial admissions." This reading of *D'Amico* is clearly wrong.

 "The purpose of the summary judgment procedure is not to try the issues but merely to discover . . . whether the parties *possess evidence* which demands the analysis of trial." (*Colvin v. City of Gardena* (1992) 11 Cal.App.4th 1270, 1275 [15 Cal.Rptr.2d 234], italics added.)

While the *D'Amico* rule permits a trial court to disregard declarations by *a party* which contradict his or her own discovery responses (absent a reason-

---

[5] Lodge Log argues that the deposition testimony presented in opposition to the motion was "self-serving, lack[ed] foundation, [was] equivocal, and constitute[d] hearsay." However, because these evidentiary objections were not presented to the trial court, they were not preserved and we may not consider them. (See *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 140 [127 Cal.Rptr.2d 145]; Evid. Code, § 353.)

able explanation for the discrepancy), it does not countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute. (See *People ex rel. Dept. of Transportation v. Ad Way Signs, Inc.* (1993) 14 Cal.App.4th 187, 200 ["admission" that permit was cancelled was elicited in response to a compound request and was contradicted by other evidence]; *Kirby, supra,* 11 Cal.App.4th at pp. 1066–1067 [summary judgment improper where ambiguous "concession" in unverified complaint was contradicted by credible explanation in deposition]; *Mason v. Marriage & Family Center* (1991) 228 Cal.App.3d 537, 546 [279 Cal.Rptr. 51] [review of entire record indicated plaintiff's answer to interrogatory was an honest mistake]; cf. Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2004) ¶ 8:1245, p. 8D-63 [at trial, party's deposition answers do not constitute conclusive judicial admissions and may be contradicted by other evidence].)

We acknowledge that a careless exclamatory remark in an outdated version of Weil and Brown's treatise on civil procedure before trial may have led some to conclude that a party opposing summary judgment may be barred from offering any evidence that contradicts or explains his or her deposition answers. (See *Price, supra,* 213 Cal.App.3d at p. 482.)[6] However, that infamous comment has since been deleted from the publication (see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 10:156, pp. 10-55 to 10-56), and more recent cases have warned that such an uncritical application of the *D'Amico* rule " 'can lead to anomalous results, inconsistent with the general principles of summary judgment law.' " (*Scheiding, supra,* 69 Cal.App.4th at pp. 77–78, quoting *Price, supra,* 213 Cal.App.3d at p. 482.)

We conclude the trial court abused its discretion in declining to consider evidence in opposition to the motion for summary judgment in conflict with Scalf's deposition statements or evidence which otherwise disclosed the presence of triable issues of fact regarding Lodge Log's liability to the Yarbroughs. And because the summary judgment motion was based upon Lodge Log's total lack of fault in the design and manufacture of the home, it should not have been granted.

---

[6] The 1988 edition of Weil and Brown's treatise commented: " 'Note that if the case went to trial, the judge or jury might choose to believe the contradictory testimony. But for summary judgment purposes, a party is *bound* by his or her admissions made in the course of discovery!' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ([The Rutter Group] 1988) ¶ 10:84)," as quoted in *Price, supra,* 213 Cal.App.3d at page 482, italics added.

## DISPOSITION

The judgment is reversed. The cause is remanded with instructions to the trial court to vacate its order granting summary judgment to cross-defendant Lodge Log on Scalf's cross-complaint and for further proceedings not inconsistent with the views expressed herein. Scalf is awarded his costs on appeal. (Cal. Rules of Court, rule 27(a).)

Hull, Acting P. J., and Robie, J., concurred.