Filed 11/5/13  LDI Growth Partners v. JPMorgan  Chase Bank CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **LDI GROWTH PARTNERS LLC,** | |
| **Plaintiff and Respondent,** | **A136021** |
| **v.** | |
| **JPMORGAN CHASE BANK, N.A.,** | **(Contra Costa County Super. Ct. No. CIVMSC10-01453)** |
| **Defendant and Appellant.** | |

Defendant JPMorgan Chase Bank, N.A. (Chase), appeals from the trial court's rulings on the parties' cross-motions for summary judgment and summary adjudication. Chase contends the court erred in denying its motion for summary adjudication as to plaintiff LDI Growth Partners LLC's (LDI) cause of action for statutory conversion, and in granting LDI's motion for summary adjudication on that claim.  Chase argues LDI's claim fails as a matter of law because LDI admitted in response to a request for admissions that the entity who received certain checks allegedly converted by Chase was not acting as an agent for LDI; it is undisputed that LDI must have directly or through an agent received delivery of the checks to state a claim for conversion.  (Cal. U. Com. Code, § 3420.)  We reverse, concluding that LDI's admissions are dispositive.

1

## FACTUAL BACKGROUND

The following facts are undisputed.

LDI is in the factoring business, which means it purchases accounts receivable from clients and then obtains payment from the clients' customers. In August 2008, LDI entered into a "Factoring and Security Agreement" (Agreement) with Sola Systems, Inc. (Sola). LDI purchased accounts receivable from Sola, including those of John Muir Health Systems (John Muir Health).

The Agreement identified Sola as "Seller" and LDI as "Purchaser." Among other things, section 7.1(g) of the Agreement authorized LDI to "notify any Account Debtor obligated with respect to any Account, that the underlying Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser." Consistent with that provision, at the end of August 2008, LDI sent John Muir Health a written notice directing John Muir Health to remit all payments due on Sola's invoices directly to LDI. The notice states it "will remain effective until you are again notified by [LDI] in writing to the contrary." The notice was not revoked in writing. The Agreement provides for a 15 percent "Misdirected Payment Fee" for any payment "which has been received by Seller and not forwarded in kind to Purchaser on the next business day following the date of receipt by Seller."

John Muir Health provided three checks issued in December 2009 and January 2010 directly to Sola instead of mailing them to LDI. The checks were made out to "LDI GROWTH PARTNERS LLC FOR THE ACCT OF SOLA SYSTEMS" and in the amount of $76,760.40, $14,444.30, and $4,530.00. In January 2010, Sola deposited the three checks into its bank account with Chase. Chase accepted the checks and credited Sola's account with the proceeds.

## PROCEDURAL BACKGROUND

LDI filed the present action in May 2010 and filed its second amended and operative complaint (Complaint) in January 2012. LDI alleged causes of action for statutory conversion (Cal. U. Com. Code, § 3420) and negligence.

2

In September 2011, LDI responded to Chase's first set of requests for admission and admitted Sola was not an agent of LDI authorized to receive any checks directly from John Muir Health. Specifically, Chase asked LDI to admit that Sola "was not an agent of [LDI] who was authorized to receive from John Muir Health" each of the three checks at issue this action. LDI responded, "Admitted that [Sola] was not authorized to receive any checks directly from John Muir Health."

Both Chase and LDI filed motions for summary judgment and summary adjudication of the causes of action in the Complaint. In an April 2012 declaration, LDI's president, Melissa Donald, stated, "[i]n order to expedite Sola's cash flow, I, on behalf of LDI, granted Sola the authority to physically pick up the checks at John Muir Health and transport them directly to LDI for deposit into the LDI account. In other words, Sola was authorized to transport, but not receive (as in keep) John Muir Health checks." (Fn. omitted.) Donald provided a similar explanation in a March 2012 deposition.

Chase argued to the trial court that LDI was bound by its admission that Sola was not an agent authorized to receive the John Muir Health checks. LDI argued Donald's declaration and deposition testimony were consistent with LDI's admissions, because "receive" did not mean the same thing as "receive delivery." The trial court denied the parties' cross-motions for summary judgment; granted Chase's motion for summary adjudication on the negligence cause of action and denied LDI's motion with respect to that claim; and denied Chase's motion for summary adjudication on the statutory conversion cause of action and granted LDI's motion with respect to that claim. In a May 2012 minute order, the court reasoned: "Under California Uniform Commercial Code section 3420, for a payee to recover for conversion of an instrument, the payee must have actual or constructive possession of the stolen instrument bearing the payee's name. [Citation.] However, 'delivery to an agent is delivery to the payee.' [Citation.] [¶] In this case, there is uncontradicted evidence that LDI had granted Sola limited authority to pick up checks from John Muir Health on a routine basis, to expedite the delivery of checks to LDI. Ms. Donald consistently stated in LDI discovery responses, in

3

her deposition testimony and in her declaration, that Sola did not have authority to 'receive' checks on its own account, but that Sola did have authority to expedite the delivery of checks to LDI by physically picking up and delivering the checks to LDI. . . . "

On May 15, 2012, the trial court entered judgment in favor of LDI in the amount of $117,776.18, including interest. This appeal followed.

DISCUSSION

Chase contends the trial court erred in denying its motion for summary adjudication on the conversion claim and in granting LDI's motion on that claim. Chase asserts LDI's claim fails as a matter of law because LDI is bound by its admission that Sola lacked authority to receive John Muir Health checks; it argues the trial court erred in considering Donald's declaration and deposition testimony contradicting that admission. We review the trial court's ruling de novo. (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471.)

"Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission. [Citations.] Facts established by pleadings as judicial admissions ' "are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted by the party whose pleadings are used against him or her." [Citations.] . . .' [Citation.]" (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746.) "In moving for summary judgment, a party may rely on the doctrine of judicial admission by utilizing" admissions "to eliminate triable issues of material fact." (*Id.* at p. 747.) "[W]here a party in discovery has made an admission which justifies summary judgment in favor of his opponent, he cannot attempt to defeat the summary judgment motion by submitting a declaration contradicting the admission." (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 961.)

The California Supreme Court in *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, explained that admissions made in discovery "have a very high credibility value," because they are "obtained not in the normal course of human activities and

4

affairs but in the context of an established pretrial procedure whose purpose is to elicit facts.  Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*Id.* at p. 22.) Where a declaration submitted in opposition to a motion for summary judgment contradicts a prior " 'clear and unequivocal admission,' " the trial court is bound to disregard the declaration and " 'conclude there is no *substantial* evidence of the existence of a triable issue of fact.' [Citation.]" (*Id.* at p. 21.)  Admissions made in the context of a response to a request for admissions are particularly significant because the procedure is "specially designed to pare down disputed issues in a lawsuit" and a party's admissions in that context, "are ' "a studied response, made under sanctions against easy denials," that occur "under the direction and supervision of counsel, who has full professional realization of their significance" ' [citation]." (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522 (*Scalf*).)

Accordingly, LDI is bound by its judicial admission that Sola was not an agent "authorized to receive any checks directly from John Muir Health."  This is critical because LDI's direct or constructive receipt of the checks at issue is an element of LDI's conversion cause of action.  Section 3420, subdivision (a) of the California Uniform Commercial Code provides:  "The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by (1) the issuer or acceptor of the instrument or (2) *a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee*."  (Italics added; see also Hagedorn, Brady On Bank Checks (2013) ¶ 30.03[4], p. 30-43 (rev. 6/10) ["In general, recovery by a payee whose indorsement is forged will be denied where it is shown that no delivery of the check took place.  In other words,

5

delivery or at least some sort of constructive delivery to the payee is necessary to enable the payee whose name is forged as indorser to proceed against any bank that handled the instrument for collection or payment. . . ." (Fn. omitted.)].) It is undisputed that LDI, the payee on the John Muir Health checks, did not directly receive the checks from John Muir Health. Thus, if Sola, which apparently received delivery of the checks directly from John Muir Health, was not acting as an agent of LDI in receiving delivery of the checks, then LDI's conversion claim fails.

LDI does not dispute that it is bound by its admissions, or that it must show actual or constructive receipt of the John Muir Health checks to prevail on its conversion claim. Instead, LDI argues Donald's declaration and deposition testimony do not contradict its admissions because, although Sola lacked authority to "receive" the John Muir Health checks, it did have authority to "receive delivery" of the checks. In making this argument, LDI suggests the word "receive" implies that the recipient has the right or intent to keep the item received, while the phrase "receive delivery" does not.

"Trial courts have the discretion to consider parol evidence that explains an admission. [Citation.] However, while courts may utilize evidence to elucidate and explain an admission, they cannot use such evidence to contradict the plain meaning of a response to a request for admissions. [Citation.] If a response to a request for admission is unambiguous, and is not subject to different meanings, the matter admitted is conclusively established. [Citation.]" (*Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 260 (*Monroy*).)

LDI's response to Chase's request for admissions was not ambiguous. In particular, the word "receive" in Chase's request for admissions and LDI's response cannot reasonably be understood to mean only receipt with the right or intent to retain ownership. The Merriam-Webster's Collegiate Dictionary broadly defines "receive" as "to come into possession of." (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 1038.) The Oxford English Dictionary defines "receive" in a similarly broad manner that is also *expressly* inconsistent with LDI's narrow definition: "[t]o take in one's hand, or into one's possession . . . ; to take delivery of (a thing) from another, either for oneself or

6

for a third party." (13 Oxford English Dict. (2d ed. 1989) p. 314.) Regardless of which definition one adopts, it is clear the word "receive" does not necessarily imply anything about the right or intent to retain ownership of the item. In other words, although sometimes those who receive an item have the right or intent to keep it, the plain meaning of "receive" does not imply such a right or intent.

That Chase was using the word in its ordinary, broad meaning is clear because Chase asked LDI to admit Sola "was not an agent . . . who was authorized to receive" the checks from John Muir Health. In the context of the Agreement, if Sola was acting as an *agent* for Chase in receiving the checks then it necessarily would *not* have been receiving the checks for the purpose of keeping them itself. (Civ. Code, § 2295 ["An agent is one who represents another, called the principal, in dealings with third persons."].) If one reads Chase's request for admissions through the prism of LDI's narrow definition of "receive," the request for admissions makes no sense: if Sola was acting as an agent of LDI, then it necessarily was *not* authorized to "receive" the checks (i.e., receive delivery of them with the intent to keep them). That is, under LDI's definition of "receive," it is senseless to ask whether an entity is an agent authorized to "receive" checks for a principal. The answer must be no; otherwise the entity would not be acting as an agent. Thus, the only reasonable interpretation of Chase's request, and LDI's response, is that "receive" referred simply to coming into possession of the checks, regardless of Sola's ultimate right or intent to retain ownership of the checks.

If LDI was defining "receive" narrowly in its response, it was obligated to indicate it was doing so. Under section 2033.220 of the Code of Civil Procedure, an answer to a request for admission "shall be as complete and straightforward as the information reasonably available to the responding party permits" (subd. (a)) and "[a]dmit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party" (subd. (b)(1)), or "[d]eny so much of the matter involved in the request as is untrue" (subd. (b)(2)). LDI did not qualify its responses by explaining that Sola had authority to receive the checks for the purpose of expediting delivery to LDI, but Sola did not have authority to receive the

7

checks for the purpose of keeping them. (See *Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, 778 [defendant bound by plain language of its admissions where it "simply admitted each of the referenced statements without any objection to [the] defined term or explanation as to whether the admissions applied to defendant or one of its 'affiliates' "].)

Finally, even if LDI's admissions were reasonably susceptible to different meanings, the other evidence in the record does not support LDI's proffered interpretation. Although a finding there is a genuine issue of material fact may not be based on a party's declaration that contradicts its own discovery responses, a party may rely on "other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute." (*Scalf*, *supra*, 128 Cal.App.4th at pp. 1524-1525; see also *Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272, 277 ["In those cases in which the court determines that an admission may be susceptible of different meanings, the court must use its discretion to determine the scope and effect of the admission so that it accurately reflects what facts are admitted in the light of other evidence."]; accord, *Monroy*, *supra*, 164 Cal.App.4th at p. 260.)

In the present case, LDI points to no evidence in the record, *other* than Donald's self-serving declaration and deposition testimony, that supports its interpretation of its admissions. In fact, the other evidence in the record undermines this interpretation. Most instructive is the fact that LDI's proffered distinction between "receive" and "receive delivery" is inconsistent with the use of the word "receive" in the Agreement. In particular, the Agreement imposes a "misdirected payment fee" for any payments "received by" Sola and not forwarded to LDI by the next business day. Clearly, the Agreement uses "received" in its ordinary meaning as coming into possession of a payment, with no implication of a right or intent to retain the payment. Furthermore, LDI's purported authorization of Sola to "receive delivery" of checks from John Muir Health conflicts with the August 2008 written notice to John Muir Health that, consistent with the Agreement, instructed that all payments be mailed directly to LDI.

8

For the reasons above, we conclude LDI's admissions precluded the trial court from concluding there is an issue of material fact as to whether Sola acted as an agent for LDI in receiving delivery of the John Muir Health checks.  Thus, the court erred in denying Chase's motion for summary adjudication as to the conversion claim.  Because both claims in the Complaint fail as a matter of law, we will direct the trial court to grant Chase's motion for summary judgment.

## DISPOSITION

The trial court's judgment in favor of LDI is reversed.  On remand, the trial court is directed to grant Chase's motion for summary judgment and enter judgment in favor of Chase.  Costs on appeal are awarded to Chase.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

9