Filed 7/17/24  Rangel v. Montebello Unified School District CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| MARIA E. RANGEL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MONTEBELLO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants and Respondents. | B322606<br><br>(Los Angeles County Super. Ct. No. 18STCV01908) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Audra Mori, Judge.  Reversed.

Raymond Ghermezian, Raymond Ghermezian for Plaintiff and Appellant.

Law Offices of Beth M. Henderson, Ann C. Hall, for Defendants and Appellants.

# I.   INTRODUCTION

Plaintiff Maria Rangel tripped and fell on the pavement at a swap meet owned and operated by defendants.[1]  The trial court granted summary judgment in favor of defendants on plaintiff's personal injury complaint, finding no triable issue of fact on her claim that her injuries were caused by a dangerous condition of the District's property.  We reverse.

# II.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   *Plaintiff's Complaint*

On October 22, 2018, plaintiff filed a complaint against the District and three other governmental entities,[2] asserting two causes of action for maintenance of an inherently dangerous condition of public property under Government Code section 835[3] and vicarious liability for wrongful acts or omissions of public employees under section 815.2.  According to plaintiff, on June

---

[1]   Defendant Montebello Unified School District (the District) owned the property where plaintiff fell and defendant Fenix Merchandise U.S.A., Inc. (Fenix) operated the swap meet held at that location.

[2]   The three other governmental entities, the City of Commerce, the County of Orange, and the County of Los Angeles, are not parties to this appeal.

[3]   All further statutory references are to the Government Code unless otherwise indicated.

23, 2018, she tripped and fell on a dangerous condition maintained on property owned and managed by defendants.

On November 29, 2018, the District answered the complaint, generally denying the allegations and asserting, among other affirmative defenses, that the alleged condition of the property was not a "'dangerous'" condition under sections 830 and 835.

On May 30, 2019, plaintiff filed an amendment to the complaint naming Fenix as a codefendant. On March 4, 2021, Fenix answered the complaint, generally denying the allegations and asserting, among other affirmative defenses, that the alleged defect in the subject property was a "[t]rivial [d]efect."

B.    *Summary Judgment Proceedings*

1.    Defendant's Motion

On October 22, 2021, defendants filed their motion for summary judgment, contending, among other things, that there was no "dangerous condition of public property". According to defendants, their percipient and expert testimony established that plaintiff's injuries were not caused by a dangerous condition on their property, and plaintiff's testimony was too speculative to create a triable issue on causation because she was inconsistent in describing both the condition of the pavement that caused her fall and its location within the swap meet property.

As support for the motion, defendants submitted the declarations of: (1) their expert Marc Blanchette; (2) Fenix principal Martin Fierro (Fierro); (3) Fenix principal Alejandra

3

Fierro (Alejandra); and (4) their attorney (authenticating certain deposition transcripts and exhibits).

    2.       <u>Defendants' Evidence</u>

        a.       Plaintiff's Deposition Testimony

At her deposition, plaintiff testified as follows: At about 10:00 a.m. on June 23, 2018, she went to the local swap meet located near Gage and Garfield with her husband and daughter. Once there, plaintiff walked around by herself looking at the merchandise in booths. As she walked down a wide aisle, she fell. She believed the toe of her shoe struck a "bump", causing her to trip and fall on her left side. She landed "on top of the bump" and could feel the bump underneath her.

Plaintiff did not see the bump before she fell. It was "the same color as the street cement" with no visible markings. Plaintiff initially estimated that the obstruction on which she tripped was "a little high . . . about nine or [10] centimeters." She later said the bump was perhaps one centimeter high. She also estimated that the area was "[a]bout a foot" wide and described it as going from "one booth to the other booth" across the aisle. Although she initially seemed uncertain whether the obstruction was "a speed bump that you would find in a parking lot," she later adopted defense counsel's characterization of the obstruction as a "speed bump."

Plaintiff's daughter took five photographs of the swap meet on the day of the incident. Of these, the only one that plaintiff was certain depicted the exact area where she fell was exhibit 4. Exhibit 4 depicts a relatively flat area of the asphalt that

4

includes an irregularly shaped raised area. She recognized that photograph as depicting the location of her fall because it showed "the firefighter's foot." According to plaintiff, that photo showed "the little . . . the bump," "a little edge that—it's up a little. It's raised a little." Referring to a portion of exhibit 4 that defense counsel circled in green, plaintiff explained, "Yes, that is like a bump because it is raised. It was raised quite high."[4]

### b. Fierro's Testimony

In his declaration, Fierro stated the following: Fierro was the president of Fenix. In August 2014, Fenix entered into a license agreement with the District to use the property and facilities located at 6360 Garfield Avenue as an open-air mall. On June 23, 2018, the date of plaintiff's fall, Fenix was leasing the premises.

---

[4] Plaintiff went back to the swap meet with her husband and daughter "weeks later" to look for the bump on which she tripped. But, according to plaintiff, "they had already changed the layout of the swap meet, so now the bump was in the parking lot. It was not by the booths anymore." Her daughter and husband took more photographs of the area where she fell. Of those after-the-fact photographs, plaintiff said that the one marked as exhibit 9 to her deposition "could be" the area, but she was not certain. She also initially believed that the photograph marked as exhibit 10 showed the area, but believed that the white lines on the bump, as shown in that photo, were painted on it sometime after she fell. After further questioning, however, plaintiff stated that exhibit 10 depicted a different area than the one where she fell, and she confirmed that none of the other after-the-fact photographs taken by her husband and daughter showed the area.

5

On the day of the incident, Fierro was present at the property. Although he was not in the area at the time of the fall, he eventually directed fire department personnel to the area. Fire department personnel responded to "the area of the [s]ubject [a]isle located past the painted yellow diagonal hash marks and near where the north and south side fences protrude inward towards the middle of the aisle." The yellow hash marks painted on the asphalt were present in the aisle on the day of the incident. Following the incident, "yellow arrows were painted on the asphalt near where the north and south fences protrude inward towards the middle of the [s]ubject [a]isle." Finally, there were no speed bumps in the area where plaintiff fell and "[t]here was no significant height differential in the location where [p]laintiff fell."

After the lawsuit was filed, Fierro escorted Blanchette to the area of plaintiff's fall, where Blanchette took photographs and measurements. According to Fierro, the photograph marked as exhibit 8 at his deposition depicted the area where plaintiff fell. She fell near the red booth shown in that photo. There were no speed bumps in that area among the booths, and the speed bumps that were in the premises parking lot were marked; he had done the marking himself.

c. Alejandra's Testimony

Alejandra agreed that exhibit 8 showed the area where she saw the responding paramedics, who were there with plaintiff when she arrived. She confirmed that the area in the picture was flat with no obstruction. She also claimed that there were no

6

speed bumps in the area of the property where the swap meet was being held that were not marked.

### d.     Blanchette's Testimony

Blanchette was retained by defendants as an expert in "the assessment of walkway safety and injury biomechanics."  He reviewed, among other documents, plaintiff's deposition, her responses to written discovery, and certain photographs.  From that material, he understood and assumed the following facts: plaintiff tripped on an unmarked speed bump at the swap meet property which she described as either nine to 10 centimeters or only one centimeter in height; and she described the location of the bump inconsistently.

Blanchette visited and inspected the swap meet property with Fierro.  Based on his understanding of where fire department personnel responded that day, he found the area near the yellow hash marks where the north and south fences protruded inward towards the middle of the aisle.  He took measurements and photographs at the site.

Blanchette attached to his declaration exhibits B, C, D 1–4, E, F, and G, photographs which showed the area he inspected. Blanchette measured the maximum height differential along the full width of the asphalt transition to be approximately 5/16 of an inch overall and the abrupt change in height to be approximately 3/16 of an inch.  In Blanchette's opinion, the height differential along the asphalt transition was not a dangerous condition.

### 3. Plaintiff's Opposition

Plaintiff opposed the motion, arguing that defendants had failed to satisfy their initial burden of making a prima facie showing that there was no triable issue of fact concerning whether there was a dangerous condition of property. And that, in any event, her two expert declarations showed that there was a triable issue of material fact concerning the existence of a dangerous condition. In support of her opposition, she submitted her deposition testimony, the expert declarations of Enrique Rivera and Brad Avrit, and, among other exhibits, photographs of the property taken during Rivera's site inspection.

### 4. Plaintiff's Evidence

#### a. Rivera Declaration

Rivera worked as a forensic engineer for WEXCO, an engineering consulting firm retained by plaintiff's counsel to provide expert opinions on safety and liability arising from plaintiff's trip and fall on the swap meet property. He inspected the swap meet parking lot with plaintiff who showed him the area where she fell. He took 29 photographs during his inspection of the parking lot as well as "the area where [p]laintiff tripped and fell." Based on his site inspection and analysis of historic Google Earth images, he concluded that the section of the speed bump on which plaintiff tripped and fell had subsequently been removed, along with a similar section of another speed bump that crossed the same pathway. Rivera attached to his declaration the 29 photos that he took.

8

### b. Avrit's Declaration

Avrit, a licensed civil engineer and the president of WEXCO, was retained by plaintiff's counsel to provide expert opinions in this case on safety and liability issues arising from plaintiff's trip and fall at the swap meet property. In preparing his declaration, he reviewed the deposition transcripts of plaintiff, Fierro, Alejandra, certain responses to written discovery, defendant's motion for summary judgment, Google Earth images of the swap meet site, 39 photographs of the site provided by plaintiff's counsel, and 29 photographs taken by Rivera during his site inspection.

Avrit concluded that Blanchette had inspected the wrong location, the speed bump over which plaintiff tripped was located in a different part of the aisle, and the speed bump had subsequently been removed from that location, preventing inspection of it. But, based on plaintiff's description of the speed bump and certain photos, including Exhibit 4, he determined that the height of the speed bump upon which plaintiff fell was "likely greater than [two] inches." Such a bump, in Avrit's opinion, was a dangerous condition.

### 5. Reply and Objections

Defendants filed a reply brief arguing, among other things, that plaintiff could not defeat summary judgment with evidence that contradicted her deposition admissions about the location of her fall, citing the Supreme Court's decision in *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21–22 (*D'Amico*). They also submitted objections to plaintiff's evidence in opposition,

9

including objections to the entirety of Avrit's declaration, and, alternatively, to specific paragraphs of that declaration.

6. <u>Ruling</u>

On February 28, 2022, the trial court held a hearing on defendants' summary judgment motion. After hearing argument, the court issued a ruling denying the motion. First, citing *People v. Sanchez* (2016) 63 Cal.4th 665, the trial court sustained four of defendants' objections to specific paragraphs of Avrit's declaration "to the extent Avrit relates or relies on case-specific-facts [he] has not established independent knowledge of." The court also sustained two other objections "because Avrit [did] not state the evidence or facts relied on to reach the conclusions. (See [*Fernandez v. Alexander*] (2019) 31 Cal.App.5th 770, 781–782 . . . .)"

The trial court then concluded that defendants had made a prima facie showing that there was no triable issue concerning the dangerous condition issue and, based on its ruling on the objections to Avrit's declaration, that plaintiff had failed to carry her burden of demonstrating a triable issue of material fact as to whether her injuries were caused by a dangerous condition of the property.

## III. DISCUSSION

A. *Summary Judgment Framework*

The standard of review for summary judgment is well settled. "[T]he party moving for summary judgment bears an

10

initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact . . . . A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851, fns. omitted (*Aguilar*).)

"In reviewing a grant of summary judgment, we independently evaluate the record, liberally construing the evidence supporting the party opposing the motion, and resolving any doubts in his or her favor. [Citation.] As the moving party, the defendant must show that the plaintiff has not established, and reasonably cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499–500.)

B.    *Legal Principles*

1.    Liability of Governmental Entities

Plaintiff's complaint asserted two causes of action against defendants under sections 835 and 815.2.[5] The Government Claims Act (§ 810 et seq.) therefore governs defendants' liability.

---

[5]    Plaintiff does not raise any separate challenge on appeal to the trial court's order summarily adjudicating her second cause of action under section 815.2 for vicarious liability for wrongful acts of public employees and wrongful retention of unfit employees.

11

"'Liability may attach to a governmental entity if there is a dangerous condition on governmental property.  (§§ 830, 835.)  A condition is "dangerous" if it creates a "substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (§ 830, subd. (a).)  Conversely, a condition is "not dangerous," if "the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care . . .' in a reasonably foreseeable manner.  (§ 830.2.)"  (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1103–1104.)

### 2.      Trivial Defect Doctrine

"'The trivial defect doctrine originated to shield public entities from liability where conditions on public property create a risk "of such a minor, trivial or insignificant nature in view of the surrounding circumstances . . . no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."'  [Citation.]  The trivial defect doctrine is not an affirmative defense.  It is an aspect of duty that a plaintiff must plead and prove.  [Citation.]

"In appropriate cases, the trial court may determine, and the appellate court may determine de novo, whether a given

walkway defect was trivial as a matter of law. (§ 830.2; [citation].) 'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.' [Citation.] If, however, the court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not conclude that the defect is trivial as a matter of law. [Citation.]" (*Huckey v. City of Temecula, supra*, 37 Cal.App.5th at pp. 1104–1105, fn. omitted.)

C.    *Prima Facie Showing*

The trial court concluded that defendants' evidence satisfied their initial burden as moving parties on the motion. Plaintiff does not challenge that conclusion on appeal. We will therefore assume for purposes of our analysis that defendants satisfied their initial burden of making a prima facie showing sufficient to shift the burden to plaintiff to show the existence of a triable issue of fact on whether a dangerous condition of the property caused her injuries.

D.    *Evidentiary Rulings*

Plaintiff challenges the trial court's rulings sustaining six of defendants' objections to Avrit's declaration. We will assume, without deciding, that the court did not abuse its discretion in excluding that testimony to the extent it was based on case-specific facts of which Avrit did not have personal knowledge or was otherwise conclusory. We limit our review to the balance of

13

plaintiff's evidence, including those portions of Avrit's testimony that were based on his background and experience, to determine if it raises a triable issue of fact on whether a dangerous condition of the swap meet property caused plaintiff's injuries.

E.    *Triable Issue*

As explained, we conduct a de novo review of the record to determine whether defendant demonstrated that "under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We review all of the evidence submitted in support of and opposition to the motion, indulging every reasonable inference that may be drawn in favor of the opposing party.  (*Aguilar, supra*, 25 Cal.4th at p. 843 [the court must consider all of the evidence and all of the inferences reasonably drawn therefrom and must view such evidence and such inferences in the light most favorable to the opposing party].)  "'We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits.  We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence.' [Citation.]" (*Price v. Victor Valley Unified School District* (2022) 85 Cal.App.5th 231, 238.)  "[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

The determination of whether the dangerous condition caused plaintiff's injuries turned on the experts' evaluations of

14

the condition of the pavement at the site where plaintiff fell. The parties, however, did not agree on the location of the fall. Defendants' expert, Blanchette, based his opinion on Fierro's testimony concerning the location. Blanchette measured the bump at that location, found that the maximum height differential along that bump was 5/16 of an inch, and concluded that it was not a dangerous condition. Plaintiff's expert, Avrit, based his opinion on where in the swap meet he understood plaintiff had tripped and fallen. He then opined that plaintiff tripped on a portion of a speed bump that was a dangerous condition.

Defendants argue that, without those portions of Avrit's testimony to which their objections were sustained, plaintiff's testimony about the location and condition of the pavement where she fell was too vague and inconsistent to support the existence of a triable issue on whether plaintiff's injuries were caused by a dangerous condition. They therefore conclude that there is no factual dispute and that there is only one location for the fall supported by the evidence, namely, the one inspected by their expert.

Plaintiff's deposition testimony created triable issues concerning whether there was a speed bump or other height differential at the location where she fell; if so, what the height of that differential was; and whether any such differential constituted a dangerous condition of property. Although plaintiff's testimony was at times vague, inconsistent, and equivocal concerning the condition of the pavement at the location of her fall, when viewed in a light most favorable to plaintiff, it showed the following: Plaintiff tripped at a location in the swap meet where there was an obstruction. She described it

15

as nine to 10 centimeters high, approximately a foot wide, and as running across the aisle from the booths on one side to the booths on the other.  She also said the obstruction was not marked and therefore was difficult to distinguish from the surrounding asphalt.

In addition, exhibit 4, which plaintiff confirmed showed the location and obstruction, depicted the condition of the asphalt and did not show yellow hash marks.  And, Avrit testified, based on his knowledge and experience, that exhibit 4 "depict[ed] the edge[ ] and rise of a speed bump."

Looking at exhibit 4, we cannot conclude, as a matter of law, that the raised area was no more than 5/16 inches high.  Instead, the state of the record supported an inference that Blanchette, who made that conclusion, had examined the wrong location and that the location of plaintiff's fall, as described in her testimony and exhibit, had an obstruction that was more than trivial.

In reaching this conclusion, we note that this is not a case in which plaintiff unequivocally made an admission against her interest during discovery about the location prior to the filing of the motion, such that she would be procedurally prevented from contradicting it.  (See *D'Amico, supra*, 11 Cal.3d at pp. 21–22 [a party may not defeat summary judgment by means of declarations or affidavits which contradict that party's deposition testimony or sworn discovery responses].)  Although plaintiff's deposition testimony was vague and equivocal on the location issue, that fact alone cannot support a summary adjudication of the issue against her.  (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1521, 1522–1523 ["*D'Amico*[*, supra*, 11 Cal.3d 1] has never stood for the proposition that highly inculpatory

16

testimony elicited from a party in a deposition may be sufficient by itself to warrant summary judgment, or that it relieves the moving party of its ordinary burden of showing the absence of a genuine factual dispute. On the contrary, the cases are clear that summary judgment should not be granted on the basis of 'tacit admissions or fragmentary and equivocal concessions'"].)

## IV. DISPOSITION

The judgment is reversed. Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.          LEE, J.*

---

\*     Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.